Otha GRIGSBY et al.,
Plaintiffs-Appellants,

v.

NORTH MISSISSIPPI MEDICAL CENTER, INC., Defendant-Appellee.

No. 76–2207.

United States Court of Appeals,
Fifth Circuit.

Dec. 15, 1978.

458

Kenneth Mayfield, Tupelo, Miss., Melvyn R. Leventhal, Jack Greenberg, Clyde E. Murphy, New York City, for plaintiffs-appellants.

Guy Mitchell, Jr., Thomas D. Murry, Tupelo, Miss., for defendant-appellee.

Before COLEMAN, CLARK and RUBIN, Circuit Judges.

CHARLES CLARK, Circuit Judge:

This case challenges employment practices at North Mississippi Medical Center (Medical Center), a facility consisting of a hospital in Tupelo of over 400 beds, a mental health complex in Tupelo, and a 50-bed satellite unit in Baldwyn. The suit was initiated in 1974 by Otha Grigsby seeking individual and class relief from racial discrimination in violation of 42 U.S.C.A. §§ 1981 and 1983 and the thirteenth amendment to the United States Constitution. Subsequently, Eular Young, Eddie Black, and Essie Sneed intervened, asserting alleged violations of their civil rights pursuant to 42 U.S.C.A. § 1981. The intervention by Eddie Black also invoked jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq.[1]

Prior to certification of the class, however, the district court, on motion by defendant, limited plaintiffs' discovery interrogatories to those concerning employment practices of the mental health complex and the satellite unit, the only units in which the named plaintiffs were employed. At that time it specifically reserved determination of the membership or extent of the class. No class was certified until the first day of trial. The class then certified was not limited to the two units named, but was certified under F.R.Civ.P. 23(b)(2) on behalf of:

All present, discharged, laid off, and future black employees of defendant who have been or may in the future be affected by any policy or practice of defendant of racial discrimination in the areas of initial job assignment, promotions, job classification, employee disciplinary actions and termination of employment.[2]

The district court found that the evidence presented by Grigsby, Black, Young, and Sneed was sufficient to make out a prima facie case of discrimination on their individual civil rights claims, but concluded that the defendant satisfied its burden of coming forward with legitimate nondiscriminatory reasons for terminating Grigsby, Young, and Sneed and for not promoting Black. Furthermore, the court rejected Black's Title VII claim. As to the class, the court determined that no prima facie case had been established; therefore, the burden never shifted to defendant. The instant appeal is by Otha Grigsby, Essie Sneed, Eddie Black, individually, and on behalf of the certified class.[3] They challenge the court's limitation of discovery and its conclusions regarding the individual and class claims. Because the trial court's findings as to the individual claims are not clearly erroneous, we affirm. For the reasons stated below, we remand the class issue with directions.

At the time of trial, the Medical Center employed approximately 1,120 persons, of whom 814 (73%) were white and 306 (27%) were black, in an area with a 21% black population. At trial, plaintiffs and defendants both submitted statistical evidence of the racial composition of the various personnel categories in these two units. Generally, executive and supervisory positions were occupied by whites, whereas blacks to a great extent staffed the housekeeping and dietary departments. Other evidence indicated that the Medical Center had no facially discriminatory hiring practice, seniority system, or transfer policy, and that it provided a continuing education program equally available to all employees.

Plaintiff Otha Grigsby, whose educational background included a master's degree in

1. Doris Collier and Betty Sullivan also intervened but withdrew their complaints without prejudice before trial.

2. The district court adopted the Report and Recommendations of the United States Magistrate who defined the class based on the following premises: "that the only party seeking to represent an alleged class is plaintiff Grigsby; that the other plaintiffs have intervened merely for the purpose of asserting their individual claims and, incidentally, to demonstrate some of the forms which the alleged discrimination against black employees by the defendant may take."

3. Eular Young filed notice of appeal, but withdrew it.

sociology and anthropology, was employed as an Occupational Health Specialist in the mental health complex of the Medical Center in August 1973. He was responsible for soliciting employer participation in a newly created program designed to assist employers in recognizing alcohol or other drug-related problems of employees and to encourage referral of those employees to the mental health complex for appropriate treatment. After working with the program for more than eight months, Grigsby had not succeeded in securing a single signed employer commitment, and the Director of the mental health complex issued an ultimatum stating that he would be terminated if he could not get results within 30 days. Grigsby was unable to produce an agreement within that time. Additional factors also led to the Director's decision to terminate Grigsby. He had received negative reactions from employers, who expressed lack of confidence in Grigsby's ability to handle employee problems. Furthermore, he determined that the program itself required a more clinical approach. Thereafter Grigsby was given notice of his termination and was "laid off" in August 1974 despite his last-minute production of several contracts. Grigsby's failure to obtain earlier results cannot totally be attributed to his inadequacy. The program was an innovation, which as first drafted required a fee commitment, and needed time to earn acceptance in the community. However, Grigsby's replacement, a white with practical clinical training and a master's degree in community counselling, secured approximately 16 agreements from employers in his first year with the program.

Eddie Black was employed in June 1972 as manager-counselor at an alcoholic outreach center under the supervision of two white coordinators. These supervisors were responsible for coordinating services provided in the counties, supervising and training field personnel, and conducting group therapy sessions. When one of the coordinators resigned, a decision was made among the directors of the program to look outside the mental health complex for candidates since they felt that no current employee, includ-

ing Black, was qualified for the position. Shortly after a replacement with supervisory and counseling experience was hired, Black was promoted to a level just below coordinator-supervisor, filling a vacancy brought about by a white's discharge for inadequate performance. Black accepted the promotion but resigned in less than two months in a "fit of pique" for having been denied the supervisor's position.

Essie Sneed injured her back while lifting a bed patient during her initial 90-day probationary employment as nurse's aide. Although the Medical Center does not normally terminate employees for absences necessitated by on-the-job injuries, it discharged her before the end of her three-month probation for excessive absenteeism. Sneed, however, failed to report to work or call in for more than a week after she had been released by her physician to return to work.

At the outset, we disagree with plaintiffs' contention that discovery was improperly limited by the district court. Plaintiffs attribute their inability to make a prima facie showing of class discrimination to the court's limitation of their second interrogatory request. However, at the time of its order the court had not yet decided on the broad class certification. Thus it then acted well within its discretion in circumscribing plaintiffs' request to prevent an undue burden on defendants. Plaintiffs engaged in no further discovery other than the submission of revised interrogatories conforming with that order. They at no time challenged the order, nor did they seek its revision once the class was certified to include the entire Medical Center. While it is true that class certification did not occur until the morning of the trial, plaintiffs never pursued an earlier ruling, nor did they request a continuance or other accommodation for further discovery. In the absence of any indication that the district court would not have granted such a request, no error appears.

In *Williams v. DeKalb County*, 582 F.2d 2 (5th Cir. 1978), this court recently confirmed that a plaintiff charging racial dis-

crimination, individually or as a class, must make a showing of purposeful discrimination before the burden shifts to the defendant to rebut the charge. In so doing, we distinguished the less stringent prima facie requirements applied to Title VII claims, which do not require discriminatory purpose. Relying on *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), *Williams* equated § 1981 standards with the purposeful discrimination requirement of the fifth and fourteenth amendments.

■ The plaintiffs here introduced statistical evidence which could possibly indicate that the Medical Center's employment practices had a racially disproportionate impact. However, their remaining proof wholly failed to show any purposeful discrimination in the Medical Center's conduct. Thus no proper prima facie case was established.

■ Plaintiffs' non-statistical proof consisted of their individual claims. Grigsby contented he was discharged because of his race. Weighing the evidence presented, the district court concluded that his discharge was for cause and was totally unrelated to his race. This is not clearly erroneous. The record sufficiently emphasized that the factors influencing the decision to terminate and replace Grigsby were his inability to stimulate participation in the "troubled employee" program, the negative responses to Grigsby's approach, and the program's need for a person with more clinical experience and training in a mental health discipline.

■ Similarly, we do not find fault with the district court's disposition of Black's employment discrimination or Title VII claims. The evidence supports its finding that among all the applicants for the coordinator position the replacement alone possessed the necessary supervisory experience in counseling. Although Black argues that he was not notified that the standard interview process would be followed, the court's finding to the contrary is not clearly erroneous. We agree that his subsequent resignation therefore was entirely voluntary and not a constructive discharge. *See,*

e. g., *Young v. Southwestern Savings & Loan Association*, 509 F.2d 140 (5th Cir. 1975).

Essie Sneed, by her own admission, was not terminated because of her race. Although the circumstances surrounding her discharge were disputed at trial, the district court's conclusion, based on the witnesses' testimony before it, that defendant satisfactorily showed her termination was not based upon nor influenced by her race is well supported.

Because defendant Medical Center did not base its employment decisions regarding the individual plaintiffs Grigsby, Black, and Sneed upon discriminatory grounds, and because no evidence offered showed purposeful racial discrimination, the district court's finding in favor of defendant on the class claim was not in error.

■ Generally, all class members are bound by the judgment rendered in an action in which a class is properly certified. *See* 3B Moore's Federal Practice ¶ 23.11[5] (2d ed. 1978). Yet, due process requires that the interests of absent class members be adequately represented in a class suit for that judgment to be res judicata as to them. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1942).

■ This class was certified under F.R. Civ.P. 23(b)(2), without notice to class members. Although 23(c)(2) by its terms mandates that notice be given to all members of a 23(b)(3) class, this notice provision does not apply to 23(b)(1) or (b)(2) classifications. Similarly, the 23(c)(2) opt-out privilege given to absent (b)(3) members is not accorded (b)(1) or (b)(2) members. *See Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973). Therefore, the propriety and adequacy of representation accorded to absent class members by the named parties in (b)(1) and (b)(2) actions should be critically evaluated before their rights are foreclosed.

■ The litigants in this case were far from diligent in performing their obligations. They appear much more intent upon establishing their individual claims than upon attempting to prove that the hiring

practices of the Medical Center involved purposeful racial discrimination. Also, although in the initial complaint filed in August 1974 he alleged he represented a plaintiff class, Grigsby did not file a motion for class action determination until January 12, 1976, six weeks before the date set for trial. This motion was not made until the case had been set for trial, discovery ordered completed, and the district court had, in December 1975, sua sponte referred the issue to a magistrate. After the class was certified on the day trial began, the named plaintiffs made no effort to expand the court-imposed limitations on discovery in order to prepare themselves adequately to pursue the class claims. Given the dearth of evidence and deficiency of effort on behalf of the absent class members, there may not have been proper and adequate representation of their rights. Before defining a class suit, the district court must determine that "the representative parties will fairly and adequately protect the interest of the class." F.R.Civ.P. 23(a)(4). The court's responsibilities do not end there; it must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished. *See Guerine v. J & W Inv., Inc.,* 544 F.2d 863, 864 (5th Cir. 1977); *Gonzales v. Cassidy, supra* at 75 n.15, *Eisen v. Carlisle and Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968). In the present state of this record, we decline to preclude the rights of absent class members and remand the action with directions to the district court to reconsider the issue of adequacy of representation and enter a decree adjudicating the res judicata effect on such absent class members which is to be accorded to the judgment we affirm against the named parties.

AFFIRMED IN PART.

REMANDED IN PART.