Thomas JOHNSON, Individually, and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

UNCLE BEN'S, INC., Defendant–Appellee.

No. 78–1437.

United States Court of Appeals, Fifth Circuit.

Oct. 17, 1980.

Carol Nelkin, Houston, Tex., Randall L. Speck, Jerry D. Anker, Washington, D.C., for plaintiff–appellant.

Philip J. Pfeiffer, Houston, Tex., for defendant–appellee.

## ON PETITION FOR REHEARING

Before VANCE and SAM D. JOHNSON, Circuit Judges, and THOMAS *, District Judge.

VANCE, Circuit Judge:

The motion for rehearing is granted. This panel's unpublished opinion of April 11, 1980, 615 F.2d 917 (5th Cir.), is vacated in its entirety.

### I.

This appeal challenges the district court's disposition of a class action brought pursuant to section 1981, 42 U.S.C. § 1981, and Title VII, 42 U.S.C. § 2000e et seq. Suing on behalf of a class of black persons and Mexican–American persons who have been, are, or may be, employed by defendant Uncle Ben's, Inc., plaintiffs alleged in their complaint that Uncle Ben's had engaged in a variety of discriminatory employment practices. Specifically, they contended that Uncle Ben's discriminated against both groups in compensation, hiring, promotion, transfer, seniority and other terms and conditions of employment. The district court, however, held that plaintiffs had failed to present a prima facie case showing discriminatory treatment of Mexican–Americans and on all but one issue regarding blacks, and, therefore, it dismissed as to these issues at the conclusion of plaintiffs' case. On that one issue, the district court found· that plaintiffs had established a prima facie case of discrimination against blacks in pro-

* District Judge of the Southern District of Alabama, sitting by designation.

motion, but ultimately ruled in favor of Uncle Ben's on this point as well.

### II.

The district court adopted and applied an erroneous notion of the controlling legal principles regarding the use and role of statistics in an employment discrimination case. In discussing the promotion issue, the district court stated,

If we accept the Plaintiff's side of the case, all that the experts say, the way I see it, is that *what has transpired in the real world at Uncle Ben's could not have statistically happened by chance.* We are not here to enforce a law which says that things must occur within the limits of mathematical probability. The law says the defendant may not discriminate on the basis of race. *The law does not say that the defendant shall not violate the rules of mathematical probability.*

A business such as the Defendant's cannot be run successfully by chance. Decisions as to who may best serve in any given job must be made rationally by persons with sufficient knowledge of the individuals and jobs involved to make such decisions.

(Emphasis added.) This standard is incorrect.

Statistics as to racial composition of the defendant's work force serve an important role in judging employment discrimination cases. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977); *Fisher v. Procter & Gamble Manufacturing Co.*, 613 F.2d 527, 543–44 (5th Cir. 1980). "Where gross statistical disparities can be shown, they alone may . . . constitute prima facie proof of a pattern or practice of discrimination." *Hazelwood School District v. United States*, 433 U.S. 299, 307–08, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977). *See also Fisher v. Procter & Gamble Manufacturing Co.*, 613 F.2d at 544; *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 225 & n.34 (5th Cir.

1974). The class plaintiffs do not need to prove knowing and intentional discrimination to prove a disparate impact case. *International Brotherhood of Teamsters v. United States*, 431 U.S. at 335 n.15, 97 S.Ct. at 1854–1855 n.15; *Scott v. City of Anniston*, 597 F.2d 897, 898 (5th Cir. 1979), *cert. denied* —— U.S. ——, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). Nor must the plaintiffs prove a racially disproportionate impact with " 'complete mathematical certainty.' " *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 337 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978) (quoting *Vulcan Society of the New York City Fire Department, Inc. v. Civil Service Commission*, 490 F.2d 387, 393 (2d Cir. 1973)).

▮ The clearly erroneous standard of review does not apply to findings of fact premised upon an erroneous view of controlling legal principles. *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1382 (5th Cir. 1978), *cert. denied*, 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1372 n.20 (5th Cir. 1974). The district court's findings based on its misunderstanding of this legal standard are entitled to no deference. We must undertake an independent analysis of the record before us in light of the correct legal standards.

### III.

Plaintiffs alleged that between 1972 and the institution of this suit in 1974, and as far back as 1960,[1] Mexican–American workers, who comprise nine percent of Houston's labor market, constituted only four percent of Uncle Ben's employees. This gross disparity between Uncle Ben's workforce and the relevant labor market, which is statistically significant, ordinarily would satisfy plaintiff's initial burden of establishing a prima facie case of hiring discrimination. *Hazelwood School District v. United States*, 433 U.S. at 307–08, 97 S.Ct. at 2741–2742; *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d at 225 & n. 34. Despite Uncle Ben's contrary claims, we ascribe no affirmative legal significance to Uncle Ben's increase in the number of its Mexican–American employees subsequent to the filing of this suit. *International Brotherhood of Teamsters v. United States*, 431 U.S. at 341–42, 97 S.Ct. at 1857–1858; *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d at 1385–86.

This case nevertheless raises a difficult problem involving whether there was evidence of Uncle Ben's substantial underutilization of Mexican–Americans at the close of plaintiffs' direct case. Uncle Ben's asserts that the district court properly dismissed plaintiffs' allegations of discrimination against Mexican–Americans because at the close of plaintiffs' case the record was devoid of evidence supporting such allegations. We agree.

▮ Plaintiffs' case regarding Mexican–Americans rested on the testimony of their expert, Richard Alfred Tapia, to the effect that Uncle Ben's substantially underutilized Mexican–Americans. On cross examination, however, Dr. Tapia disclosed that he had relied on statistics relating to 1975, more than a year after suit was filed. He conceded that he had no information regarding the number of Mexican–Americans employed and terminated during the period covered by the suit. He conceded further that the basis for his opinion did not include

---

1. Discrimination prior to the effective date of Title VII, July 2, 1965, can be considered under two theories. Since the appellant's allegations are also made under 42 U.S.C.A. § 1981, employment practices prior to 1965 may be examined. Secondly, this court specifically explained in *United States v. Jacksonville Terminal*, 451 F.2d 418, 441 (5th Cir. 1971), *cert. denied* 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815 (1972), and *affirmed in Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973), that pre–act discriminatory conduct is highly relevant, especially, when considering neutral practices under Title VII alleged to carry forward past discriminatory effects. *See United States v. Dillon Supply Co.*, 429 F.2d 800 (4th Cir. 1970). *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d at 218 n. 10. *See also Hazelwood School Dist. v. United States*, 433 U.S. 299, 309 n. 15, 97 S.Ct. at 2742–2743 n. 15, 53 L.Ed.2d 768 (1977).

prior interviews with any of Uncle Ben's employees or an examination of any of the company's personnel files. Dr. Tapia relied instead on Uncle Ben's answers to interrogatory number 13 alone, which Dr. Tapia acknowledges he incorrectly assumed to relate to 1974. In fact, the information related to September 12, 1975. This interrogatory answer was introduced into evidence. Plaintiffs' counsel failed to offer other available evidence that contained the 1974 data that would have established a prima facie case of discrimination. Because there was no substantial evidence before the court of discrimination during the period covered by the suit, the district court correctly dismissed the claim regarding Mexican–Americans. Plaintiffs' counsel never sought to have the claim reopened when the availability of the needed data became evident.

### IV.

The district court originally, and at the time quite correctly, determined that plaintiff would adequately represent the certified class of blacks and Mexican–Americans. At trial, however, representation of the class of Mexican–Americans was not adequate. The thrust of plaintiffs' direct case concerned the situation involving black employees. Although this may well have been necessary on the issue of promotion considering the small number of Mexican–Americans employed by Uncle Ben's, plaintiffs' preoccupation with the issue of black promotion seemingly led them to omit to introduce into evidence the number of Mexican–Americans hired by Uncle Ben's.

 Under Rule 23 of the Federal Rules of Civil Procedure, the trial court has a duty to supervise plaintiffs' presentation to safeguard the rights of the class being represented. *Grigsby v. Northern Mississippi Medical Center, Inc.*, 586 F.2d 457, 462

(5th Cir. 1978); *Guerine v. J & W Investment, Inc.*, 544 F.2d 863, 864–65 (5th Cir. 1977). When it became apparent that plaintiffs did not adequately represent the Mexican–Americans, the trial court should have taken action such as dividing the certified class into a separate subclass for the Mexican–American members, *see* Fed.R. Civ.P. 23(c)(4), decertifying that class, or certifying a second class. To remedy the trial court's failure in this respect we now hold that dismissal of all claims regarding Mexican–Americans is without prejudice. This judgment does not have res judicata effect against them in light of plaintiffs' total failure adequately to represent them. *Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 691, 81 S.Ct. 1309, 1314, 6 L.Ed.2d 604 (1961) ("the judgment in a class action will bind only those members of the class whose interests have been adequately represented by existing parties to the litigation"); *Grigsby v. North Mississippi Medical Center*, 586 F.2d at 461–62; *Gonzales v. Cassidy*, 474 F.2d 67, 73–75 (5th Cir. 1973).

### V.

Plaintiffs' case of employment discrimination against blacks showed that the proportion of that group in each job grade did not reflect the proportion of blacks available for promotion from lower job levels.[2] Plaintiffs further alleged that Uncle Ben's filled its better jobs generally by promoting employees from within the firm rather than making lateral hires from without. Blacks, therefore, tended to remain in those low paying, entry level positions while similarly situated whites advanced upward from such positions.

 The district court correctly determined that plaintiffs' statistical evidence and testimonial evidence made out a prima facie showing of discrimination against

---

**2.** Plaintiffs demonstrated, *inter alia*, that of the 172 plant hourly positions, 118 such positions were held by blacks (68.6%). In the next four higher zones, blacks held 30 of the 67 positions (44.8%). Taking higher plant hourly pay zones into account as well as all office hourly jobs and the salaried jobs, blacks represented 35.8%

of Uncle Ben's total work force. The overall pattern appeared to be one of blacks being clustered in the lowest paying jobs. Even those few blacks who entered the generally more desirable salaried jobs tended to be clustered in the least remunerative and responsible jobs at those levels.

blacks on the promotion issue. *E. g., Watkins v. Scott Paper Co.,* 530 F.2d 1159, 1185–86 (5th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976); *Rowe v. General Motors Corp.,* 457 F.2d 348, 357 (5th Cir. 1972). Uncle Ben's then had the " 'onus of going forward with the evidence and the burden of persuasion,' " *James v. Stockham Valves & Fittings Co.,* 559 F.2d at 330 (quoting *United States v. Hayes International Corp.,* 456 F.2d 112, 120 (5th Cir. 1972)), as to either the existence of "legitimate, nondiscriminatory reasons for [its] action by a preponderance of the evidence," *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1255 (5th Cir. 1977), or the total unacceptability of plaintiffs' statistical proof, *see EEOC v. Datapoint Corp.,* 570 F.2d 1264, 1269 (5th Cir. 1978) ("statistics must be relevant, material and meaningful, and not segmented and particularized and fashioned to obtain a desired conclusion"); *Robinson v. Union Carbide Corp.,* 538 F.2d 652, 658 (5th Cir. 1976), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977); *Johnson v. Goodyear Tire & Rubber Co.,* 491 F.2d at 1371.

The trial court held that plaintiffs' prima facie case had been rebutted by Uncle Ben's evidence showing both the absence of discriminatory impact and the presence of "legitimate, nondiscriminatory" explanations for the status quo. Plaintiffs did not introduce evidence that these explanations were pretextual.

The findings regarding the absence of discriminatory impact are, in pertinent part, as follows:

11. Plaintiff also introduced through Dr. Tappia [sic] evidence of differences in upward mobility–wage increases received by Defendant's black and white employees. . . . Such evidence does not, however, when considered in conjunction with countervailing evidence of individual cases offered by Defendant, establish discriminatory treatment of Defendant's black employees.

12. During the period from August 8, 1971 through May 10, 1974, limiting the analysis to employees who were employed on both dates, Defendant's black employees received a statistically significant greater wage increase than did Defendant's white employees. . . . Further, . . . the Court finds that the percentage increase in black wages exceeded the percentage increase in white wages regardless of whether or not individuals in job classifications falling within the EEOC category "Officials & Managers" are included. . . . Utilizing salary level groupings suggested by Plaintiff's Exhibit No. 8, e. g., employees earning less than a given amount, any differences in black–white wage increases during the 1971–74 period were not statistically significant. . . .

13. The Court finds that any differences in wage increases received by black and white employees, or claimed differences in upward mobility as between black and white employees, were due to specific individual attributes of Defendant's employees. Such differences were not due to the race of the employee concerned. The referenced attributes or upward mobility factors include, for example, limited ability to read, write and make numerical calculations; promotion refusals; demotion requests; non–shift work requests; lack of interest in changing jobs; and performance shortcomings.

14. As of March 31, 1974, the Defendant employed 141 blacks out of a total work force of 394 employees. Considering the job classifications utilized at Defendant's facilities and the necessary requirements for those jobs, and based upon the 1970 United States Census availability data, the Court finds the Defendant employed an equitable number of blacks in view of their availability within the Houston SMSA.

. . . . .

19. In terms of the number of employees promoted, their time in grade prior to promotion and the wage increases received upon being promoted, the Court finds that there has been no statistically significant difference in the treatment of Defendant's black and white employees.

. . .

The district court's findings concerning legitimate, nondiscriminatory reasons are, in relevant part, as follows:

15. The large number of black employees employed within Defendant's lower job zones is not the result of racial discrimination.

16. The Court finds, based upon the testimony of Dr. Richard Jeanneret, an expert in the field of industrial psychology and job analysis, that Defendant's requirements for its jobs are valid, job-related and necessary. The Court further finds that certain of Defendant's jobs require knowledge and skills not obtainable through on–the–job or internal Company training or experience.

17. The job classifications/positions within Defendant's Office differ greatly from those within its Plant. They involve and require different skills, knowledge and training.

18. Because of the Office–Plant differences, and because the lines of progression and patterns of promotion respecting wage differentials and time in grade differ significantly, statistical analyses which separate Office and Plant employees are proper and allow meaningful comparisons to be made and conclusions to be drawn. The joinder or lumping together of Office and Plant employees does not provide a meaningful or valid basis for comparing the treatment of black and white employees.

On the discriminatory impact issue, Uncle Ben's persuaded the district court that the black/white ratio in each of Uncle Ben's job levels should be compared to the black/white ratio in comparable jobs in the Houston SMSA, and not compared to the black/white ratio in the relevant lower job level(s) at Uncle Ben's. The district court accepted this argument and, because of the favorable statistical comparison between Uncle Ben's at various levels and similar Houston SMSA job levels, found that Uncle Ben's had not violated Title VII.

■ The dispositive issue is whether Uncle Ben's ordinarily employs individuals for upper level positions by hiring laterally from outside the company or by promoting from within. If it hires laterally, the relevant comparison is to the general or qualified outside labor force. If Uncle Ben's fills jobs by promotion, the relevant comparison, as we recognized in *James v. Stockham Valves & Fittings Co.*, 559 F.2d at 331, 341, is the company's internal work force. *Accord, Hereford v. Huntsville Board of Education*, 574 F.2d 268, 272–273 (5th Cir. 1978). The applicability of *James* in any given case turns on whether vacancies in non–entry level positions are or could be filled by promotion. If the vacant positions ordinarily are filled by lateral hires or hiring from among graduates of relevant educational programs, then the rigid *James* rule is inapplicable. *See Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 620–21, 94 S.Ct. 1323, 1333–1334, 39 L.Ed.2d 630 (1974); *Hester v. Southern Ry.*, 497 F.2d 1374, 1379 n.6 (5th Cir. 1974).

The difficulty is that most cases fall between these extremes of exclusive promotion and of exclusive nonpromotion. As a general matter, however, cases are dealt with in terms of the extreme to which they most closely accord. In addition, the necessity of nonpromotions in certain jobs–or even in the majority of jobs within a company–should not foreclose an inquiry at trial into whether the remaining jobs filled by promotion are discriminatorily filled.

The district court frankly ignored deciding the questions of whether any promotion or upward mobility occurs at Uncle Ben's, and, if so, whether blacks suffer a disparate impact in seeking promotions. The trial court's findings 11–13 and 19 suggest that promotions occur. Findings 14–16 suggest that no promotions are made from Plant to Office. Yet neither set of findings is necessarily incorrect: Uncle Ben's may fill some of its positions by promotions while it must fill other positions from outside the company. If so, it is insufficient to know that blacks constitute 141 of Uncle Ben's 394 employees. We must know how many of those 394 employees hold jobs that ordinarily cannot be filled by promotion to decide the question of discriminatory impact.

The district court must, therefore, prepare new findings on discriminatory impact. Findings of fact 12 and 14, for example, are useless to the extent they incorporate or commingle facts about lateral hiring. First, the new findings must determine the number of Uncle Ben's jobs that were filled by promotion and the number that were filled by hiring from the outside of the Uncle Ben's work force. In essence, the absence or presence of blacks in lateral hire positions is generally irrelevant to the question of discrimination in promotion. Because the issue of discrimination in lateral hiring for desirable positions at Uncle Ben's has not been properly raised, the district court must excise facts germane to that issue from its assessment of discrimination in promotion. Second, the district court must decide whether Uncle Ben's has rebutted or discredited plaintiffs' prima facie showing that in promotions blacks are relegated to lower level jobs and are promoted at a significantly slower rate than whites. On this question, statistics comparing Uncle Ben's work force to the external labor market are irrelevant. Third, the district court also must find whether the legitimate nondiscriminatory reasons that it credited, based on a correct view of the controlling legal principles on that point, apply to any of the promotion positions and not just to the lateral hire positions. Given the peculiar nature of this case, on remand the district court will not abuse its discretion if it allows plaintiffs and Uncle Ben's an opportunity to clarify and supplement their original presentations.

The two issues of access–promotion and lateral hiring (including hiring from schools)–should be kept separate in scrutinizing statistical analyses. *Cf. Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d at 1372–73 (statistical consequences of unvalidated testing should not be manipulated by including effects of independent transferral policy). Assuming that Uncle Ben's only hired whites for nonpromotion positions, only similarly situated black applicants have suffered discrimination. The class of black laborers who are striving, or would be striving but for discrimination, *International-*

*al Brotherhood of Teamsters v. United States*, 431 U.S. at 363–64, 97 S.Ct. at 1868–1869; *James v. Stockham Valves & Fittings Co.*, 559 F.2d at 341–42, for a promotion from within the company to a promotion job may not have been injured. Similarly, if lateral hires were exclusively black, this would provide little solace for the class of black laborers, and would not mitigate any discrimination suffered in promotions.

## VI.

■ The trial court erred in tacitly approving the part of Uncle Ben's promotion system that is based on the use of subjective supervisory evaluations. We have repeatedly held that subjective selection processes involving white supervisors provide a ready mechanism for racial discrimination. *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d at 1385; *James v. Stockham Valves & Fittings Co.*, 559 F.2d at 345; *Rowe v. General Motors Corp.*, 457 F.2d at 359.

Uncle Ben's subjective promotion system substantially embodies the mechanisms that we invalidated in *Rowe* :

(i) The foreman's recommendation is the indispensable single most important factor in the promotion process.

(ii) Foremen are given no written instructions pertaining to the qualifications necessary for promotion. (They are given nothing in writing telling them what to look for in making their recommendations.)

(iii) Those standards which were determined to be controlling are vague and subjective.

(iv) Hourly employees are not notified of promotion opportunities nor are they notified of the qualifications necessary to get jobs.

(v) There are no safeguards in the procedure designed to avert discriminatory practices.

*Id.* at 358–59 (footnote omitted). *See Wade v. Mississippi Cooperative Extension Service*, 528 F.2d 508, 518 (5th Cir. 1976) (§ 1981 standard). These *Rowe* vices are

not undone here simply because Uncle Ben's has made certain changes about the time this suit was instituted. Nor is *Rowe* avoided because subjective decisions are made by a group instead of an individual. *See Robinson v. Union Carbide Corp.*, 538 F.2d at 661–62. This is not, moreover, a case of permissible subjectivity. *Davis v. Board of School Commissioners*, 600 F.2d 470, 475 (5th Cir. 1979), *modified on other grounds*, 616 F.2d 893 (5th Cir. 1980).

In all likelihood, the district court did not mean to approve Uncle Ben's subjective promotion system. Rather, it probably concluded that *Rowe* was inapplicable because no resulting substantial discrimination existed. *Hester v. Southern Ry.*, 497 F.2d at 1381. We hold that Uncle Ben's subjective promotion system fails, unless the district court concludes in light of our instructions in Part V that blacks suffered no discriminatory impact in promotion.

## VII.

If the district court finds on remand that a discriminatory impact existed, it must then reexamine its conclusions regarding whether Uncle Ben's educational requirements have been validated. Should such inquiry be necessary, it must be made, in light of the following standards and principles.

 Title VII was specifically designed to remove "artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). *Cf. Miller v. International Paper Co.*, 408 F.2d 283, 294 (5th Cir. 1969) ("The ethic which permeates the American Dream is that a person may advance as far as his talents and his merit will carry him.") An educational requirement for a job is lawful if it is required by "business necessity," *Griggs v. Duke Power Co.*, 401 U.S. at 431, 91 S.Ct. at 853–854;

*Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895, 899–900 (5th Cir.), *cert. denied*, 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978), and valid under the EEOC's Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607 (1979); *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). *See generally Griggs v. Duke Power Co.*, 401 U.S. at 431–33, 436, 91 S.Ct. at 853–854.[3] An educational requirement is not a measure of probable performance for many jobs at Uncle Ben's. *See Watkins v. Scott Paper Co.*, 530 F.2d at 1181–82 & n. 30. This test of "justified business necessity" may, of course, be relevant, leaving aside the question of discriminatory impact, to the question on remand whether certain jobs are filled by promotion or lateral hiring.

MODIFIED AND AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

DANIEL HOLCOMBE THOMAS, District Judge, dissenting:

This writer respectfully dissents. In the course of rendering its decision, the district court stated "that what has transpired . . : at Uncle Ben's could not have statistically have [sic] happened by chance," yet "[t]he law does not say that the defendant shall not violate the rules of mathematical probability." Although this and similar statements indicate the Court's confusion as to the role of statistics in cases of this sort, *e. g., Fisher v. Procter & Gamble Mfg. Co.*, 613 F.2d 527, 544 (5th Cir. 1980). I would affirm because, when evaluated on legally sufficient grounds, the district court's findings regarding the lack of discrimination in the promotion of blacks at Uncle Ben's are not clearly erroneous. I would further conclude that the district court did not err in holding that the plaintiffs had failed to establish a *prima facie* case on all issues other than discrimination against blacks

---

**3.** In certain cases, however, if an employer has never attempted to validate an education requirement criterion, this failure to validate compels the conclusion that the requirement is invalid. *Watkins v. Scott Paper Co.*, 530 F.2d at 1182 n. 31.

with respect to promotions. I would affirm the ruling of the district court.

I dissent.