**George H. GONZALEZ, Plaintiff,**

v.

**State of CONNECTICUT, Department of Transportation, James Sullivan, James F. Byrnes, Walter H. Coughlin, Frederick J. Sanders and Joseph J. Obara, Defendants.**

**Civil Action No. 3:99CV01796(AWT).**

United States District Court,
D. Connecticut.

July 24, 2001.

Otto P. Witt, James S. Brewer, West Hartford, CT, for plaintiff.

Clare E. Kindall, Attorney General's Office, Hartford, CT, for defendants.

### RULING ON MOTION FOR SUMMARY JUDGMENT

THOMPSON, District Judge.

The plaintiff, George Gonzalez, claims that he was unlawfully discriminated against on the basis of his race because in two instances he was not promoted by the Department of Transportation ("DOT"). The plaintiff's Fourth Amended Complaint states two claims: a civil rights claim pursuant to 42 U.S.C. § 2000e *et seq.* ("Title VII"), and an equal protection claim pursuant to 42 U.S.C. § 1983. The defendants have moved for summary judgment. For the reasons stated herein, the defendants' motion is being granted.

## I. *Factual Background*

The plaintiff, who is of Puerto Rican descent, has been employed by the DOT since June 15, 1970. The plaintiff has been employed in his present position as Transportation Supervising Engineer ("TSE") since March 2, 1993. The plaintiff works in the Soils and Foundations Unit, which is in the Design Services Division of the Office of Engineering. That office is part of the Bureau of Engineering and Highway Operations, which is one of the five Bureaus of the DOT.

The plaintiff's immediate supervisor is the Transportation Principal Engineer ("TPE") for the Soils and Foundations Unit. There are over thirty TPE positions throughout four of the DOT's five Bureaus.

Defendant Obara supervises the Design Services Division. Four of the five units which report to Obara are supervised by TPEs, including the plaintiff's unit. Defendant Coughlin supervises the Office of Engineering. Defendant Byrnes supervises the Bureau of Engineering and Highway Operations. Defendant Sanders is the Personnel Administrator of the DOT, and defendant Sullivan is the Commissioner of Transportation and head of the DOT.

In the spring of 1997, an Early Retirement Incentive Program ("ERIP") was announced for all state employees, with a closing date of July 31, 1997. Approximately one-third of all TPE positions at the DOT were left vacant as a result of the ERIP, including all four TPE positions in the Design Services Division supervised by Obara. In two of the four units, only one TSE remained, and that person was ap-

pointed as a temporary supervisor. In a third unit, only one of the two remaining TSEs wanted the position of temporary supervisor.[1]

However, in the Soils and Foundations Unit, three TSEs remained—the plaintiff, Leo Fontaine and Jayantha Mather. On two occasions following the 1997 ERIP, Obara met with all three remaining TSEs in the unit, and all three expressed interest in the position of temporary supervisor. Fontaine was the only one of the three with a Professional Engineer ("P.E.") License.

A P.E. License is earned by passing a two-part examination administered by the State Board of Examiners for Professional Engineers and Land Surveyors in the Department of Consumer Protection. A P.E. License is maintained by paying annual license fees. For over thirty years, the DOT has required the supervisor of the Soils and Foundations Unit to have and maintain a P.E. License. Although there have been different titles for this position, each person who has been the supervisor of the Soils and Foundations Unit since 1962 had and maintained a P.E. License.

At a third meeting with the three remaining TSEs, Obara asked the plaintiff and Mather whether they intended to obtain a P.E. License. Mather stated that he intended to pursue a P.E. License, whereas the plaintiff stated that he had no interest at that time in pursuing a P.E. License. The plaintiff has never had or applied for a P.E. License. Obara subsequently decided to promote Fontaine to be the temporary supervisor of the unit be-

---

1. Temporary supervisors are appointed for "temporary service in a higher class" (TSHC). DOT policy provides that an "employee performing TSHC retains the employment status and the Bargaining Unit and Labor Contract status of the *lower, permanent class*. The TSHC employee does not attain any status in the higher class, and except for bi-weekly pay, is not entitled to any other fringe benefits or privileges associated with the higher class." DOT Personnel Mem. No. 77–16B (Defs.' Statement of Material Facts Not in Dispute Pursuant to L.R. 9(c)(1), Exh. 14).

cause he was the only remaining TSE with a P.E. License.

After the 1997 ERIP, Commissioner Sullivan issued instructions as to how the positions left empty as a result of the ERIP would be filled. The process included posting all openings, interviewing all eligible candidates, not counting candidates' time spent in temporary service in a higher class, and being aware of affirmative action goals. The DOT's Affirmative Action Office issued a concomitant statement that the department's promotional goal for the TPE positions were one white female, one black male and one Hispanic male. A Hispanic male was subsequently appointed to the position of TPE of the Project Concepts Unit.

In mid-November 1997, job announcements were posted for all four vacant TPE positions in the Design Services Division. All interested applicants were directed to submit written applications and service ratings for the past two years, and to make arrangements for interviews. The position of TPE in the Soils and Foundations Unit included a P.E. License requirement. A P.E. License had been a requirement for the position of TPE in the Hydraulics and Drainage Unit in the Design Services Division since March 1995. A P.E. License was not a requirement for the other vacant TPE positions in the Design Services Division. The job posting for the position of TPE in the Soils and Foundations Unit included the requirement that the person have and maintain a P.E. License.

Obara specifically invited the plaintiff and Mather to apply for the position of TPE in the Soils and Foundations Unit. He informed them that they would be considered for the position if they applied, and but before either could receive a permanent appointment, he would need to obtain a P.E. License.

Fifteen DOT employees applied for the four TPE positions in the Design Services Division; the plaintiff was not among them. Six of those fifteen applied for the position of TPE in the Soils and Foundations Unit, and three of the six held P.E. Licenses. All six applicants were interviewed by a panel of three DOT managers, and the panel ranked applicants without consideration of whether an applicant had a P.E. License. The panel concluded that Fontaine was the best candidate for the position. Employees other than the plaintiff received permanent appointments to the other three TPE positions. The plaintiff did not submit any written material or schedule any interviews in response to the job announcements for the four TPE openings in the Design Services Division, whereas Mathers applied for all four positions. The plaintiff stated that he decided not to submit an application for the permanent position because he interpreted the P.E. License requirement as a bar to his promotion.

In early 1998, the DOT's Bureau of Finance and Administration decided to combine two smaller units into a larger unit, and to create a new TPE position to supervise the newly-created unit: Transportation Principal Engineer in the Property and Facilities Unit. It also decided that this new TPE position would require a Building Official License issued by the Connecticut Department of Public Safety. On March 6, 1998, a job announcement for the new TPE position was posted including the license requirement; all applications were required to be submitted by March 17, 1998. The plaintiff and three other DOT employees submitted applications; only one of the applicants had a Building Official License at the time. All four applicants were interviewed for the position by a panel of two managers, who independently ranked the applicants. Both man-

agers agreed that Phillip Parcak was the best candidate for the position and that the plaintiff ranked fourth among the applicants.

## II. *Legal Standard*

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must

be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d. Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock*, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock*, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. *See Anderson*, 477 U.S. at 248, 251, 106 S.Ct. 2505.

## III. *Discussion*

The plaintiff alleges that the defendants violated his civil rights when he was not promoted to: (i) his immediate supervisor's position as TPE in the Soils and Foundations Unit, and (ii) the newly-created position of TPE in the Property and Facilities Unit, which is in a different bureau of the DOT.

### A. *Title VII Failure to Promote Claim*

 The plaintiff has the initial burden of establishing a prima facie case of discriminatory failure to promote, in violation of Title VII, by showing that (1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances giving rise to an inference of discrimination on a basis forbidden by Title VII. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "A plaintiff's burden of establishing a prima facie case is de minimis." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir.2001). *See, e.g. Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994); *Byrnie v. Town of Cromwell*, 243 F.3d 93, 101 (2d Cir. 2001).

 In the context of a promotion, the Supreme Court noted in *McDonnell* that "in establishing a prima facie case the plaintiff must show that '[he] applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir.1998) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The Second Circuit has held that "being

'qualified' refers to the criteria the employer has specified for the position." *Thornley v. Penton Publ'g,* 104 F.3d 26, 29 (2d Cir.1997). Moreover, "[a]bsent a showing by the plaintiff that the employer's demands were made in bad faith, *see* [*Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) ], . . . . [a] plaintiff is not entitled to get his or her case before a jury by contending that the demands of the employer were not reasonably related to the performance of the job." *Id. See also Stanojev v. Ebasco Servs., Inc.,* 643 F.2d 914, 921–22 (2d Cir.1981) (employee may be discharged "on the basis of subjective business judgments, for any reason that is not discriminatory") (citation omitted).

Here, the plaintiff has not established a prima facie case of discriminatory failure to promote. The plaintiff has shown that he belongs to a protected class because he is Hispanic. However, he has not met his de minimis burden with respect to the remaining elements of a claim of discriminatory failure to promote for either the position of TPE in the Soils and Foundations Unit or the position of TPE in the Property and Facilities Unit.

■ Concerning the position of TPE in the Soils and Foundations Unit, the plaintiff has not shown that he was qualified for this position. The plaintiff concedes that a P.E. License was listed by the DOT in the job posting as one of the requirements for the position, and also concedes he did not have a P.E. License. The plaintiff also admits that he told Obara that he had no interest in pursuing such a license. Thus, based upon the DOT's criteria, the plaintiff did not qualify for the position of TPE in the Soils and Foundations Unit.

■ The plaintiff makes several conclusory allegations in opposition to the defendants' motion for summary judgment. First, he alleges that a P.E. License was never a requirement for the position of TPE in the Soils and Foundations Unit until after he showed interest in the position. The plaintiff does not introduce any evidence in support of this allegation. By way of contrast, the defendants have documented that for over thirty years, the DOT had required the person supervising the Soils and Foundations Unit to have and maintain a P.E. License. There is no genuine issue of fact as to whether the defendants acted in bad faith, and the court concludes that they legitimately imposed this requirement for the position of TPE in the Soils and Foundations Unit.

■ Second, the plaintiff alleges that the DOT could have waived the requirement of a P.E. License for him because it had waived it in the past. In support of his argument, the plaintiff points out that Dennis Levesque, a white male, was awarded the position of TPE in the Hydraulics and Drainage Unit without having obtained a P.E. License. However, the record is clear that Levesque was merely appointed to be a temporary supervisor because the former supervisor had retired under the ERIP program. The DOT's policy on "temporary service in a higher class" makes it clear that Levesque was never appointed to the position of TPE. *See supra* note 1. There is no evidentiary support for the plaintiff's contention.

Third, the plaintiff alleges that a P.E. License was not required for the position of TPE in the Hydraulics and Drainage Unit. However, the record shows that since March 1995, the DOT has required a P.E. License for the TPE position in this unit, and there is no evidence to the contrary.

■ Assuming, *arguendo,* that there is a genuine issue as to whether the plaintiff was qualified for the position of TPE in the Soils and Foundations Unit, he never-

theless fails to satisfy the requirement that he show that "[he] applied for an available position for which [he] was qualified," *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. 1089. The plaintiff fails to create a genuine issue as to whether he applied for the position of TPE in the Soils and Foundations Unit. Although the job announcement for this position directed applicants to submit written applications and service ratings for two years, and to make arrangements for interviews, the plaintiff took neither of those steps. The plaintiff alleges that he did not need to file a formal application because he became a candidate for this position by virtue of his conversations with Obara and because he became a candidate for all vacant TPE positions by virtue of the DOT's affirmative action goal that a Hispanic male be appointed to a TPE position. However, nothing in the record supports the plaintiff's conclusory allegation that there was an implicit understanding that he would be promoted because of his race and excellent evaluations as a TSE. From the time of Obara's first meeting with the plaintiff, Mather and Fontaine, Obara informed them that a P.E. License was required for the position of TPE in the Soils and Foundations Unit. He reinforced this point by appointing Fontaine to be temporary supervisor on the basis of his having a P.E. License. Obara specifically invited the plaintiff and Mather to apply for the position, with the caveat that before either of them could receive a permanent appointment, he would have to obtain a P.E. License. At the second meeting with Obara concerning the position, Mather indicated that he was pursuing a P.E. License, and Mather and Fontaine submitted applications for the position. The plaintiff, on the other hand, had informed Obara that he had no interest in obtaining a P.E. License. Finally, the plaintiff proffers no evidence that the fact that the DOT had an affirmative action goal meant that it would have ignored all of the announced procedures for filling vacancies, as well as the long-standing requirement that the person supervising the Soils and Foundations Unit have and maintain a P.E. License.

Based on the foregoing discussion, the court also concludes that the plaintiff has failed to make a showing that he was denied a promotion under circumstances giving rise to an inference of race discrimination.

■ Concerning the position of TPE in the Property and Facilities Unit, although the plaintiff submitted a formal application, he fails to show that he was qualified for this position. The job announcement was posted including the Building Official License requirement. The plaintiff admits that he did not meet this requirement because he did not have a Building Official License. The plaintiff makes the conclusory allegation that such a license was not a requirement, but he does not offer any evidentiary support for this allegation. He further argues that defendant Sanders had the authority to change the job requirements set by the Bureau of Finance and Administration, but he offers no evidentiary support for this argument either. Finally, the plaintiff fails to produce any evidence that would support a conclusion that the defendants imposed this requirement in bad faith. Thus, the court concludes that the DOT legitimately imposed this requirement.

The plaintiff also makes the conclusory allegation that previous employees who had held this position were not required to hold a Building Official License. However, the record shows conclusively that the TPE position in the Property and Facilities Unit was a newly created position.

■ In addition, the plaintiff fails to make a showing that the DOT's failure to

promote him to the position of TPE in the Property and Facilities Unit occurred under circumstances giving rise to an inference of race discrimination. The plaintiff was interviewed in the same manner in which all other applicants for the position were interviewed. He admits that all four candidates were asked the same set of questions, which none of them knew beforehand, that the two interviewing managers independently ranked the candidates, that they independently agreed upon the best candidate and that they independently agreed that the plaintiff ranked lowest among all of the candidates. He asserts no facts that would give rise to an inference of discrimination.

### B. *Equal Protection Claim*

■ The plaintiff's equal protection claim pursuant to 42 U.S.C. § 1983 fails for substantially the same reasons that his Title VII claim fails.

> In failing to prove disparate treatment for a Title VII claim based on the failure to promote ... [the plaintiff] has also necessarily failed to meet the purposeful discrimination requirement for a section 1983 violation based on equal protection or a section 1981 claim, *see* [*Personnel Adm'r v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) ]; *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597[ ] (1976); [*Grigsby v. North Miss. Med. Center, Inc.,*] 586 F.2d 457, 460–61 (5th Cir.1978).

*Knight v. Nassau County Civil Serv. Comm'n,* 649 F.2d 157, 161–62 (2d Cir. 1981).

### IV. *Conclusion*

For the reasons set forth above, the Defendants' Motion for Summary Judgment (Doc. # 54) is hereby GRANTED, and judgment shall enter in favor of the defendants.

The Clerk shall close this case.

It is so ordered.