Mack SCOTT, et al., Plaintiffs,

v.

CITY OF ANNISTON, et al., Defendants.

Civ. A. No. 75-G-0125-E.

United States District Court, N. D. Alabama, E. D.

April 16, 1981.

On Determination of Maintainability as Class Action June 4, 1981.

George C. Longshore, Birmingham, Ala., for plaintiffs.

John R. Phillips, Anniston, Ala., for Anniston Civil Service Board, Cecil Miller and Richard Sawyer.

Richard B. Emerson, Emerson & Galbraith, Anniston, Ala., for City of Anniston, Norwood Hodges, Charles A. Daugherty, Dr. Robert C. Simmons, Jr., Dr. Gordon A. Rodgers, Eugene Stedham.

William F. Gardner, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for all defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

This cause came before the court upon a motion by the defendants for a determination by the court of the status of the class action. Due to the lack of proceedings concerning the class in this cause prior to the previous district court trial, the recent case law following the Supreme Court's decision in *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), in which the Court addressed the standards for class action maintainability in a Title VII case, and the obvious possibility that the named plaintiffs may inadequately represent the class, this court orders that a hearing be held to determine the status of the class action in this cause.

A brief history of this action discloses that the class certification aspects of this action were never brought to the attention of the court. This case was filed on January 31, 1975, by three named plaintiffs,

Mack Scott, Edward Spears, and Earnest Hall, under Title VII and § 1981. The complaint alleged that the case was a Rule 23(b)(2) class action. By an order entered on October 14, 1976, the issue of liability was bifurcated from the issue of damages.

Plaintiffs never moved for class certification, so no evidentiary hearing on the maintenance of the class action was ever held. The question of class action status was not the subject of any order by the court and no findings as to the requirements of Rule 23 were made. The court was merely notified that the counsel for the defendants and the counsel for the plaintiffs had stipulated the class description, as disclosed in the court's Findings of Fact and Conclusions of Law entered on March 31, 1977, after the trial of the case, which stated:

> The parties have stipulated that the case is appropriate for class action treatment. The class is composed of all past, present and future black employees in the public works department of the City of Anniston who were at work on or after December 2, 1972.

This statement is the only reference by this court to the class action status.

This court's decision in March 1977 preceded the Supreme Court's decision in *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) by two months. The Supreme Court's decision in *Rodriguez* emphasized the Court's disapproval of the casual attitude given to class action status in Title VII cases. In *Rodriguez*, a Title VII–§ 1981 case, the Supreme Court, reversing the Fifth Circuit, held that since the named plaintiffs had not prevailed on their individual claims at the trial, they could not be treated as class representatives. Disapproving any preferred status for Title VII class actions, the Court stated:

> We are not unaware that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. *But careful attention to the requirements of Fed.R.Civ.P. 23 remains nonetheless indispensable.* The mere fact that a complaint alleges racial or ethnic discrimination does not itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination.

431 U.S. at 405–506, 97 S.Ct. at 1897–98, 52 L.Ed.2d at 463 (emphasis added).

■ The Fourth Circuit's recent opinion in *Stastny v. Southern Bell Telephone and Telegraph Co.*, 628 F.2d 267 (4th Cir. 1980) emphasizes the influence that *Rodriguez* has on Title VII class actions:

> Whatever its ultimate implications for the maintenance of Title VII class actions, the Supreme Court's admonition in *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977), that "careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensable [in Title VII actions]," was plainly intended to insure for these cases the same kind and degree of practical and conceptual analysis looking to class action allowance that the rule (hereafter Rule 23) prescribes—without differentiating by subject matter—for class actions in general. The most obvious implication, given the course of developments leading up to the admonition, was that the broad remedial purposes of Title VII and the undoubted utility and fitness of the class action device for many Title VII *actions do not relieve the obligation* imposed by subsections (a) and (b) of Rule 23 to inquire into the specific fitness, by its own facts, of each Title VII case for which class action status is sought.

628 F.2d at 273. Again, it should be emphasized that in the present case there was no motion by the plaintiff for class certification, no evidentiary hearing on class action maintainability, no findings of compliance with the Rule 23 standards, and no order certifying a class. Furthermore, the plaintiffs have the burden of establishing compliance with the requirements of Rule 23(a) and (b). *Stastny v. Southern Bell Tel. and Tel. Co.*, 628 F.2d 267 (4th Cir. 1980).

The circuit court in the *Stastny* case concluded that the district court should have decertified the class after trial because:

> [W]e conclude that the record finally laid before the court was deficient in critical ways that prevented any informed decision on certain of these crucial commonality questions. As a result, the commonality determinations implicit in the district court's certification could only have been made on the basis of speculation or larger leaps of inference that we think are permitted for Title VII cases under the teaching of *Rodriguez.*

628 F.2d at 278.

In another post-*Rodriguez* case, the Fifth Circuit affirmed the judgment of the district court against the named plaintiffs, but remanded the class aspects of the case to the district court with directions to reconsider the issue of adequacy of representation. *Grigsby v. North Mississippi Medical Center, Inc.,* 586 F.2d 457 (5th Cir. 1978). The Fifth Circuit Court of Appeals emphasized the district court's duty to continually scrutinize the adequacy of representation even after certification of the class, and withdraw certification if sufficient representation is not furnished. In *Grigsby,* the court specifically noted that the named plaintiff did not file a motion for class action determination until six weeks before the date set for the trial. In the present case, the named plaintiffs never filed a motion for class action determination.

Furthermore, the court in *Grigsby* specifically emphasized the court's duty to reevaluate the adequacy of representation in (b)(2) class actions, which we have in this case:

> This class was certified under F.R.Civ.P. 23(b)(2), without notice to class members. Although 23(c)(2) by its terms mandates that notice be given to all members of a 23(b)(3) class, this notice provision does not apply to 23(b)(1) or (b)(2) classifications. Similarly, the 23(c)(2) opt-out privilege given to absent (b)(3) members is not accorded (b)(1) or (b)(2) members. *See Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir. 1973). Therefore, the propriety and adequacy of representation accorded to absent class members by the named parties in (b)(1) and (b)(2) actions should be critically evaluated before their rights are foreclosed.

586 F.2d 457.

In another case which was affirmed *per curiam* after *Rodriguez* by the Fifth Circuit, *Johnson v. Shreveport Garment Co.,* 422 F.Supp. 526 (W.D.La.1976), *aff'd per curiam,* 577 F.2d 1132 (5th Cir. 1978), the trial court, subsequent to the trial, reconsidered the propriety of the class certification and defended its action, stating:

> The decision of the United States Court of Appeals for the Fifth Circuit in *Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir. 1973), mandates that the trial court determine the propriety of class action status at the preliminary certification stage and after trial on the merits. Therefore, although this Court certified this action as a class action on January 15, 1976, it must re-examine Rule 23 and its requirements to determine whether the case should proceed as a class action.

422 F.Supp. at 531.

It should be noted that in holding that it is proper for this court to consider the maintainability of the class action in this cause, this court has considered the decision in *Bolton v. Murray Envelope Co.,* 553 F.2d 881 (5th Cir. 1977). However, this court holds that the decision in *Bolton* is distinguishable. First, in *Bolton,* the Court of Appeals had on prior appeal specifically found liability and expressly remanded for the entry of remedial relief; on the other hand, in this case the Court of Appeals, after holding that intent is not required, merely ordered that, "[t]he dismissal of the class action is reversed and the case is remanded to the district court for further proceedings consistent with this opinion." Second, in *Bolton,* there was a finding of class certification and the appellate court specifically defined the class; in this case, there was no such finding by either the district or the circuit courts. Third, there has been no clear determination of liability in this case as there was in *Bolton.* In this

action, the question of whether liability had been established without regard to intent was not fully considered or adjudicated.

■ Finally, the Fifth Circuit's opinion in *Grigsby v. North Mississippi Medical Center*, 586 F.2d 457 (5th Cir. 1978), makes it clear that a class certification may be reevaluated after a decision on the merits. In *Grigsby*, as stated earlier, the Court of Appeals reevaluated the appropriateness of the class representation and remanded the case to the district court to reconsider the class action issue. In addition, in *Johnson v. Uncle Ben's Inc.*, 628 F.2d 419, 423 (5th Cir. 1980), the Fifth Circuit held that while the initial certification was correct, the district court should have reconsidered and taken appropriate action including decertification, pursuant to the proposition that "[u]nder Rule 23 of the Federal Rules of Civil Procedure, the trial court has a duty to supervise plaintiffs' presentation to safeguard the rights of the class being represented. *Grigsby v. Northern Mississippi Medical Center, Inc.*, 586 F.2d 457, 462 (5th Cir. 1978); *Guerine v. J & W Investment, Inc.*, 544 F.2d 863, 864–65 (5th Cir. 1977)." Thus, a class certification is subject to reevaluation after a decision on the merits.

■ This court is also aware of the contents in footnote 12 of the *Rodriguez* opinion which states:

Obviously, a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives. In such a case, the class claims would have already been tried, and, provided the initial certification was proper and decertification not appropriate, the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims.

431 U.S. 395, 406 n. 12, 97 S.Ct. 1891, 1898 n. 12, 52 L.Ed.2d 453, 463 n. 12. However, this footnote is not applicable to this case because in this case, as in *Rodriguez*, the plaintiffs did not move for class certification pursuant to Fed.R.Civ.P. 23 and no certification was ever made by the district court. The parties merely stipulated the class description. Furthermore, it may be seen in retrospect that the initial certification was not proper *and* decertification is appropriate. Perhaps this footnote in *Rodriguez* merely anticipated the Supreme Court's recent decisions in *United States Parole Comm'r v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), and *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), which the Fifth Circuit in *Walker v. Jim Dandy Co.*, 638 F.2d 1330 at 1335 (5th Cir. 1981), held to "simply suggest that the status of the individual claims is not dispositive of the class claims."

In this case, the court feels that the class aspects of the action should be reevaluated due to possible inadequate representation by the named plaintiffs. In the Findings of Fact and Conclusions of Law filed after the original district court trial, this court found no discrimination on individual claims of the three named plaintiffs. With respect to plaintiff Mack Scott, this court found that "Mr. Scott's termination [in 1974] was justified and was not based upon racial considerations." With respect to plaintiff Earnest Hall, this court found "that he never made application for promotion in the public works department of the City of Anniston, that his employment with the City of Anniston was terminated on February 13, 1976, and that said termination was not based upon racial discrimination." With respect to the remaining plaintiff, Edward Spears, this court merely noted that no evidence was introduced regarding any claim he might have.

The Court of Appeals affirmed this court's finding as to plaintiff Mack Scott. There was no mention of plaintiffs Earnest Hall and Edward Spears in the opinion of the Court of Appeals, presumably because there was no contention on appeal with regard to them.

■ This court recognizes that it would be inappropriate to suggest that the status of the individual claims is dispositive of the

class claims. However, consistent with the Fifth Circuit's recent opinion in *Walker v. Jim Dandy Co.*, 638 F.2d 1330 (5th Cir., 1981), the class may be decertified if it is found that the plaintiffs lack a sufficient nexus with the class to be one of its members. *Rodriguez* established that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members" in order to satisfy the requirements of Fed.R.Civ.P. 23(a). *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453, 462 (1977).

Consistent with the Fifth Circuit's recent opinions in *Ford v. United States Steel Corp.*, 638 F.2d 753 (5th Cir., 1981), and *Satterwhite v. City of Greenville*, 634 F.2d 231 (5th Cir. 1981), at the hearing in this cause to determine the status of the class action, this court will determine whether there is an appropriate class with a "live controversy" between the defendant and some members of the purported class.

Thus, in light of the mandate in *Rodriguez* to pay careful attention to the requirements of Fed.R.Civ.P. 23 and the status of the named plaintiffs' claims, this court holds that a hearing should be held to determine the status of the class in this action.

## ON DETERMINATION OF MAINTAINABILITY AS CLASS ACTION

This case came on for evidentiary hearing before the Court on May 11, 1981 in Anniston, Alabama on defendants' motion for determination of maintainability as a class action, which, reduced to the essentials, asserted that the case had not been properly certified as a class action and that if it had, the class should be decertified. On the basis of the evidence adduced at the hearing, as well as the record of the proceedings in the case, this Memorandum Opinion incorporating findings of fact and conclusions of law is entered.

### I.

### CLASS ACTION TREATMENT

*A. BACKGROUND:*

This case was instituted on January 31, 1975 under Title VII of the Civil Rights Act of 1964, as amended in 1972 to cover Governmental employers (42 U.S.C. § 2000e et seq.) and 42 U.S.C. §§ 1981 and 1983, alleging racial discrimination in employment in the Public Works Department of the City of Anniston, Alabama. The named plaintiffs were Messrs. Mack Scott, Earnest Hall, and Edward Spears.

The question of class action maintainability was initially treated in a less than in-depth manner. The plaintiffs never moved for class certification, and no evidentiary hearing on class action maintainability was held. Instead, on the first day of the trial in 1976, plaintiffs' counsel proposed a stipulation, accepted by defendants, that:

"For purposes of this action the class for litigation is defined as all past, present and future Black employees of the Public Works Department of the City of Anniston, Alabama, who have been employed since December 6, 1972.

The Court finds that this class action meets the requirements of Rule 23(a) and (b) and that the named plaintiffs have standing to raise the issues for purposes of injunctive relief and backpay (but not as to future employees) to which they are or may be entitled. The Court finds that the named plaintiffs filed timely charges with the Equal Employment Opportunity Commission and timely filed this lawsuit following receipt of a Right to Sue Letter dated December 6, 1974."

It will be noted that the stipulation did not identify the subdivision of Rule 23(b) under which the case was to receive class action treatment. It was assumed at the time that the stipulation had reference to 23(b)(2), since the plaintiffs never sought 23(b)(3) treatment, although it is now apparent that the case was in fact not appropriate for 23(b)(2) treatment. (This subject will be analyzed in Section H, infra).

■ It will further be noted that the stipulation did not provide that the named plaintiffs, or any of them, were appropriate

class representatives.[1] This could arguably be implied from the provision that "the named plaintiffs have standing to raise the issues—", but the problem with such an interpretation is that "standing to raise" is not the equivalent of satisfaction of the requirements of Rule 23(a). *Weiner v. Bank of King Of Prussia*, 358 F.Supp. 684 (E.D.Pa.1973) ("It must be noted that the question of standing is totally separate and distinct from the question of plaintiff's right to represent a purported class under Rule 23. While standing to sue is an essential prerequisite to maintaining an action, whether in one's own right or as a representative of a class, the issues are not convertible. Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made. Without standing, one cannot represent a class, but standing to sue does not, of itself, support the right to bring a class action. All of the other prerequisite tests of Rule 23(a) and (b)(1) or (2) or (3) must be met.").

In light of the way in which class action treatment was initially handled, and the deficiencies in the stipulation proposed and accepted at the outset of the trial, the Court is urged by the defendants to hold that the class action treatment of the case did not satisfy the requirements for Rule 23 certification and is governed by the principle, expressed in *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), that:

"The District Court treated the suit as a class action—but did not certify the action as a class action within the contemplation of Fed.Rules Civ.Pro. 23(c)(1) and 23(c)(3). Without such certification and identification of the class, the action is not properly a class action."

In view of the ultimate resolution of the matter at issue as set forth in this Memo-

randum Opinion, it is unnecessary to decide this question, because assuming arguendo that there was a certification complying with Rule 23, it is due to be decertified.

The next step in the sequence of events came on March 31, 1977, when the Court entered Findings of Fact and Conclusions of Law based on the trial in 1976. 14 EPD ¶ 7598 (N.D.Ala.1977). The principal points of this Court's 1977 decision were as follows:

First, that the termination of the employment of named plaintiff Mack Scott on January 14, 1974 "was justified and was not based upon racial considerations."

Second, that named plaintiff Earnest Hall "never made application for promotion in the public works department of the City of Anniston, that his employment with the City of Anniston was terminated on February 13, 1976, and that said termination was not based upon racial discrimination."

Third, that no findings could be made with respect to any individual claim which named plaintiff Edward Spears might have since no evidence by or with respect to him was offered.

Fourth, that a showing of purposeful discrimination was an element of a Title VII case against a Governmental employer, and there having been no such showing, judgment was due to be entered for defendants on the class claims.

Thereafter, on appeal taken by plaintiffs, the Court of Appeals entered a decision on June 25, 1979. 597 F.2d 897 (5th Cir. 1979). The Court there affirmed the denial of Mr. Scott's claim [2] but held with respect to the class claims that purposeful discrimination is not an element of a Title VII case against Government employers. The Court's mandate with respect to the class action aspect of the case was that "The dismissal of the class action is reversed and the case is re-

---

1. It will also be noted that the stipulation used a December 6, 1972 date rather than the December 2, 1972 date which was used thereafter in referring to the stipulation. The difference is not material for present purposes, so the December 2, 1972 date will be used in this Memorandum Opinion.

2. There was no mention of the rulings as to Mr. Hall and Mr. Spears, presumably because those rulings were not contested on appeal.

manded to the district court for further proceedings consistent with this opinion." A petition for certiorari by defendants was denied by the Supreme Court. 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980).

## B. SETTING OF EVIDENTIARY HEARING:

As would be expected, the parties took diametrically opposite positions with respect to the course to be followed with respect to the defendants' motion. On the one hand, the plaintiffs argued that the Court was without authority to entertain the motion or reevaluate class action status. The defendants, on the other hand, took the position that the Court had both the right and duty to reevaluate class action maintainability, that the class treatment did not comply with the mandate of *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) that "careful attention" to the requirements of Rule 23 is essential, and that assuming arguendo a class had been properly certified, it should be decertified.

Following extensive briefing and conferences with counsel, the Court entered a Memorandum Opinion and Order on April 16, 1981, setting an evidentiary hearing and ordering that notice of such hearing be given to all black persons who are or have been employed in the Public Works Department since December 2, 1972. Without covering all the points expressed in the Court's Memorandum Opinion of April 16, 1981, it is sufficient to note here the following:

First, the plaintiffs' contention that the Court was without authority to reevaluate class action treatment subsequent to trial on the merits is at odds with the principle that a trial court's obligation to ensure adequate representation of a class "mandates that the trial court determine the propriety of class action status at the preliminary certification stage and after trial on the merits." *Johnson v. Shreveport Garment Co.*, 422 F.Supp. 526 (W.D.La.1976), aff'd per curiam, 577 F.2d 1132 (5th Cir. 1978), citing *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973). Compare *Grigsby v. North Mis-sissippi Medical Center*, 586 F.2d 457 (5th Cir. 1978), in which the Court noted that class certification came on the first day of trial and went on to emphasize the continuing obligation of the trial judge to supervise compliance with Rule 23's requirements and to withdraw certification in the event of noncompliance. See also *Vuyanich v. Republic National Bank*, 505 F.Supp. 224 (N.D. Tex.1980) ("The duty to continually reevaluate class status does not end with the commencement of trial."). This principle has been recently applied in *Stastny v. Southern Bell Tel. & Tel. Co.*, 628 F.2d 267 (4th Cir. 1980), in which, following trial and decision on the merits favorable to the class, the Court of Appeals ordered decertification of the class.

In the present case, as has been pointed out above, the initial certification of the class was not given careful attention and instead was handled at the outset of the trial by a stipulation which did not explicitly provide for a class representative and did not designate the 23(b) subdivision applicable to the case. More importantly, serious questions existed with regard to whether any named plaintiff had ever been an appropriate class representative and whether the case could properly be treated as a Rule 23(b)(2) action for injunctive or declaratory relief. It can be said that the parties ought to have recognized these problems no later than the conclusion of the trial. That such was not done must be attributed to the laxness with which class action treatment in general was handled in the days prior to *East Texas Motor Freight v. Rodriguez*, supra, and to the particularly casual manner in which class treatment was stipulated at the outset of the trial in this case. In any event, it is clear that past nonrecognition of the problem may not preclude present compliance with the Court's obligation to reevaluate the propriety of class action treatment.

Second, it would not have been appropriate to resolve the question without an evidentiary hearing. In view of the substantial questions as to whether any named plaintiff was ever an appropriate class rep-

resentative, the holding of an evidentiary hearing was in order to give the plaintiffs the opportunity to offer to the Court someone else who might be substituted as a class representative.

The burden of going forward with evidence at the hearing was placed on the defendants, so that defendants would have the burden of showing that the initial class action treatment was improvident and that decertification was in order, with the plaintiffs having the opportunity of introducing evidence in support of their contentions that continued class action treatment was called for. In holding the hearing and resolving the evidence, the Court has adhered to our Court of Appeals' recent decision in *Ford v. United States Steel Corp.*, 638 F.2d 753 (5th Cir. 1981) by allowing all evidence the plaintiffs offered and by considering, inter alia, whether there is a properly maintainable class action controversy and whether anyone could be named as a class representative in the event none of the named plaintiffs has satisfied the requirements for class representative status.

## C. NOTICE:

On concluding that an evidentiary hearing was in order, the Court met with counsel for the parties on April 16, 1981 to discuss the points to be covered at the hearing and the giving of notice of the hearing. Following discussion of the question of notice, and the recording of plaintiff's objections to certain terminology of the proposed notice, an Order was entered providing for the giving of the notice to all black persons who have been employed in the Public Works Department on or after December 2, 1972 by mailing copies to such persons at their last known addresses as shown by defendants' records. In accordance with such Order, the City mailed the notice on April 20 and 21, 1981 to the 149 black persons employed in the Public Works Department since December 2, 1972. Of these 149 mailings, 35 were returned undelivered. As to these 35, the City went beyond the requirements of the Order and was able to locate 16, thus leaving 19 who could not be located.

The notice provided that the recipients were entitled to appear at the hearing and express any objection they might have to the defendants' motion, providing advance notice of such an objection was given by May 1, 1981. It should be noted that this was in no sense any species of an opt-in or any deadline limiting anyone's rights. The single purpose of this provision was to enable the parties to prepare intelligently for the hearing by being able to marshall all evidence which might be relevant to any objection. As it turned out, however, the advance notice provision became academic because the plaintiffs were allowed to present any and all witnesses they wished, this being done both by the calling of witnesses and, at the request of the plaintiffs' attorney, the eliciting of group responses from the other persons in attendance at the hearing, without regard to the filing of any advance notice.

While the advance notice provision became academic, it might be noted for complete analysis that only one person filed a notice by May 1, 1981. That was Mr. George Moore, who was not called as a witness by plaintiffs at the hearing (other than as part of the group response). The remaining notices principally consisted of a petition which objected to the defendants' motion, asked that the case be maintained as a class action, and requested "that our damages be determined as soon as possible." No explanation was offered as to the reason these notices were not filed by May 1, 1981. In any event, the Court has considered all the notices without regard to when they were received.

## D. QUESTIONS:

The questions which were outlined at the status conference on April 16, 1981 as those to be resolved, and which were the subject of the hearing on May 11, 1981, are the following:

(1) Has any named plaintiff been an appropriate class representative?

(2) If not, is there anyone else who could be treated as a class representative?

(3) Could the Court allow class action treatment without a class representative?

(4) Was there a class within a subdivision of Rule 23(b)?

(5) Is there a live controversy?

The findings of fact in answer to those questions are set forth in the following sections.

## E. HAS ANY NAMED PLAINTIFF BEEN AN APPROPRIATE CLASS REPRESENTATIVE?

The initial question to be considered is whether any of the named plaintiffs (Messrs. Mack Scott, Earnest Hall, and Edward Spears) has been an appropriate class representative at any point in the pendency of this case. The facts established by the evidence as to each named plaintiff are as follows:

### (1) Mack Scott

Mr. Scott's employment with the City was terminated on January 14, 1974 when he failed to work his assigned shift. He has not had any employment relationship with the City since then. His employment with the City thus came to an end more than a year prior to the institution of this lawsuit on January 31, 1975. The Court found that "Mr. Scott's termination was justified and was not based upon racial considerations", and the Court of Appeals held that "the Court's denial of Scott's claim is fully supported by the evidence."

Mr. Scott was present at the hearing on May 11, 1981 but was not called as a witness by plaintiffs (other than as part of the group response). Similarly, in summation at the conclusion of the hearing, there was no suggestion that Mr. Scott might arguably have been an appropriate class representative. The fact there is no argument that he might have been an appropriate class representative could reasonably be taken as sufficient in itself to compel the conclusion that he has never been an appropriate class representative for this lawsuit. Nevertheless, the Court has given the plaintiffs the benefit of an arguendo assumption that there is an argument he was a proper class representative. Viewed in the context of this arguendo assumption, the Court finds that he was not an appropriate representative of the class he claimed to represent for the following separate reasons:

First, the situation which led to the termination of Mr. Scott's employment in 1974 consisted of his giving precedence to a job he held with another employer over his job with the City. The reason he failed to work his assigned shift with the City was because it conflicted with his job with another employer. The circumstance of a person attaching more importance to employment with another employer than to his job with the defendant employer weighs against a conclusion that he would fairly and adequately represent the interest of a class composed of employees of the defendant employer. Compare *De Grace v. Rumsfeld*, 614 F.2d 796 (1st Cir. 1980) (based on plaintiff's testimony at trial that he preferred his present job with another employer, the District Court decertified the class, and the Court of Appeals held that "the district court did not abuse its discretion in concluding certification had been improvidently granted and therefore in decertifying the class."); *Cobb v. Avon Products*, 71 F.R.D. 652 (W.D.Pa.1976), appeal dismissed, 565 F.2d 151 (3rd Cir. 1977) (consideration given to plaintiff's obtaining a concurrent full-time job).

Second, while a former employee may be a class representative, the fact that Mr. Scott had not been employed with the City for more than a year when the lawsuit was filed bears against a contention that he shared the requisite nexus with a class consisting of present and future employees with respect to on-going terms and conditions of employment. Compare *Horton v. M & B Metal Products Co.*, 10 EPD ¶ 10,278 (N.D.Ala.1974) ("Horton has not had any contact with the terms and conditions of employment at the defendant's plant since June of 1970, more than four years ago. He does not have sufficient familiarity with the terms and conditions of employment at

the defendant's plant since 1970 to enable him to lead a class action regarding terms and conditions of employment."). See also the recent decision in *Strong v. Arkansas Blue Cross*, 87 F.R.D. 496 (E.D.Ark.1980), in which the Court cited, inter alia, *Pearson v. Borden Metal Co.*, 14 FEP 644 (N.D.Ala. 1976); *Horton v. M & B Metal Products Co.*, supra; *Pruitt v. Commercial Carriers*, 395 F.Supp. 1040 (N.D.Ala.1974), and *Graves v. Carraway Methodist Hospital*, 10 FEP 1268 (N.D.Ala.1974).

### (2) Earnest Hall

On the basis of the evidence presented at the 1976 trial, the Court found, with respect to Mr. Hall, "that he never made application for promotion in the public works department of the City of Anniston, that his employment with the City of Anniston was terminated on February 13, 1976, and that said termination was not based upon racial discrimination." This conclusion was evidently not contested on appeal, since the Court of Appeals' opinion contained no reference to Mr. Hall's claims.

Mr. Hall was called by plaintiffs as a witness at the hearing on May 11, 1981. His testimony consisted principally of a repetition of the claim to which he testified in 1976. His claim is distinctly unique, and since his testimony weighed against rather than in favor of a conclusion that he might have been an adequate class representative, it is probable that he was called to the stand to satisfy his insistence on again relating his claim. In any event, since he again testified to his claim, it is in order to set forth the facts relevant to his situation, which are the following:

In 1972, he was injured in an accident. He was retained by the City on the payroll until February 13, 1976, when he was terminated. The extent to which he performed any work for the City during the period from 1972 to 1976 was disputed. In the 1976 trial, he testified that after the accident in 1972, he did not return to work until the end of 1973 and that he had not worked for the City since 1974. At the hearing on May 11, 1981, he denied that he had not

worked for the City since 1974 when he was terminated in 1976. However, he did concede that during the period from 1972 to 1976, his work was "more off than on".

According to the City's records, the last time that Mr. Hall performed any work for the City was in October of 1974. On the basis of this record, the Court finds that Mr. Hall was correct in his 1976 testimony that he had not worked for the City since 1974 and that he was not correct in his testimony at the hearing in 1981 in denying that 1974 was the last time he had worked for the City.

The circumstances of his termination were also disputed. On the one hand, Director of Public Works Don Warden testified that in February of 1976, Mr. Hall advised him that he would not be able to work anymore. At that point in time, it had been nearly a year and a half since Mr. Hall had worked for the City. His employment was accordingly terminated. On the other hand, Mr. Hall denied having made this statement to Mr. Warden, but his denial is not credited for two reasons. First, Mr. Warden's testimony was credible. Second, it is a reasonable inference from all the evidence that Mr. Hall was applying for permanent disability with the Social Security Administration in 1976 and needed at that time to sever any potential for future gainful employment in order to support his application for Social Security benefits.

It is undisputed that the City not only retained Mr. Hall on the employment rolls from 1972 to 1976 but also continued to pay him on the basis of a full 40 hour week from 1972 to 1976, even though he performed no work after 1974 and although his work throughout that period of time was, according to his own testimony, "more off than on." It thus appears that rather than having been a victim of mistreatment, Mr. Hall was the beneficiary of the City's willingness to continue to pay him, at full pay, from 1972 to 1976 although he performed little work in return for wages during that period. At the hearing on May 11, 1981, Mr. Hall was asked whether there was any white employee who might have received

better treatment. His testimony, in answer to the question, was in the negative.

In summation at the conclusion of the hearing, it was not argued that Mr. Hall might have been an appropriate class representative. Since there is no argument that he might have been an appropriate person to represent the class, it is reasonably to be concluded that he was not an appropriate class representative.

■ Here again, however, the Court has engaged in the arguendo assumption that there is a contention for Mr. Hall's being treated as a class representative. Analyzing the facts in the context of this assumption, the Court finds that he was not an appropriate class representative for the following separate reasons:

First, the class claim concerned promotions.[3] It is undisputed, however, that Mr. Hall never applied for any promotion. Any contention that he was an appropriate class representative would thus face the anomaly of class claims concerning promotions being led and directed by a person who himself never sought a promotion. Compare *Wells v. Ramsay, Scarlett & Co.*, 506 F.2d 436 (5th Cir. 1975) ("the nexus between plaintiff and the class was insufficient—.").

Second, it is apparent that Mr. Hall's circumstances and claims are highly individualized and do not share typicality and commonality with the claims of anyone else. There is no doubt that his only interest in this lawsuit has been in connection with his own situation and that to his way of thinking, this lawsuit should be used to provide a renewal of payments by the City to him.[4] Compare *Smith v. Liberty Mutual Ins. Co.*, 569 F.2d 325 (5th Cir. 1978) (plaintiff's claim unique); *James v. Family Mart*, 496 F.Supp. 891 (M.D.Ala.1980) ("It is the opinion of this Court that the Plaintiff's claims do not relate to general policies or practices of discrimination but, rather, to individualized claims of discrimination which could not possibly present common questions of fact sufficient to justify class action treatment, even if the law involved in each case is substantially the same."); *Patterson v. General Motors Corp.*, 631 F.2d 476 (7th Cir. 1980) ("We agree with the finding by the lower court that because the plaintiff's grievances are so personalized, there is a serious question as to whether he could fairly and adequately protect the interests of the class.—As our examination of the Rule 23(a) requirements makes clear, plaintiff's claims and interests are simply too personal for class action certification."); *Martinez v. Bethlehem Steel Corp.*, 78 F.R.D. 125 (E.D.Pa.1978) ("In this case, the circumstances are specific circumstances peculiarly individual and personalized.").

Third, Mr. Hall's testimony at the hearing confirmed beyond any shadow of doubt that he had no claim of arguable discrimination. There is no suggestion in evidence or in argument that the City has ever done as much or more for any white employee as it did in continuing to pay Mr. Hall on the basis of a 40 hour week throughout the 1972 to 1976 period.

Fourth, Mr. Hall's testimony at the hearing revealed a lack of understanding as to the nature of the case. Compare *Greene v. Brown*, 451 F.Supp. 1266 (E.D.Va.1978) ("Miss Williams' answers to questions of counsel are those of a person lacking either in candor or in understanding or lacking in both."). As has been pointed out above, he obviously considers the lawsuit to be a vehicle for him to obtain a resumption of pay although not working.

Fifth, his testimony revealed a degree of credibility at odds with the confidence a Court is entitled to expect in one fulfilling the fiduciary responsibilities of a class representative. Compare *Pearson v. Borden Metal Co.*, 14 FEP 644 (N.D.Ala.1976) ("In view of the plaintiff's chameleon-like testi-

---

**3.** The complaint also included allegations as to hiring and tenure of employment, but those allegations were never pursued.

**4.** The inference to be drawn from the evidence is that having done all he needed to do in connection with his application for Social Security benefits, he sought a resumption of pay from the City, but without any suggestion he might be able to work.

mony, the court would hesitate to conclude that he was an adequate representative of any class, even if other Rule 23(a) requirements were met."). In testifying at the hearing, he contradicted his own earlier testimony that he had not worked for the City since 1974. Similarly, his denial that he told the City in 1976 he could not work cannot be credited. Furthermore, he obtained employment with the City by using the name "Earnest Green" because of some "trouble" he had experienced several years previously when, according to his testimony, he was shot. A person who has obtained employment by using another name does not commend himself to the courts as one who could be relied upon to represent the interests of other persons.

### (3) Edward Spears

Mr. Spears did not testify in 1976, nor was any evidence offered with reference to him, but he was called as a witness at the hearing on May 11, 1981.

He was employed by the City until 1979. His last day of employment with the City was on June 15, 1979. The circumstances relative to the termination of his employment were that in June of 1979, there was a strike by the Union which represented the Public Works employees. He was among the employees taking part in the strike. The City discharged the employees who participated in the strike, including Mr. Spears.[5] The employees who took part in the strike and were discharged were both white and black. There was no white employee who took part in the strike and was not discharged.

The employees discharged for participation in the strike had the right to appeal their discharges to the Civil Service Board, and a number of those persons did so. All of those who filed timely appeals and appeared for their hearings before the Civil Service Board prevailed on their appeals and were reinstated to employment with the City by the Civil Service Board.

However, Mr. Spears did not appeal his discharge and accordingly remained terminated. It was established by Mr. Spears' testimony that the reason he failed to join with other discharged employees in appealing to the Civil Service Board was because he was not interested in his job with the City. With skillful questioning by plaintiffs' counsel, it was suggested to him that the reason for his not appealing was because he was relying on someone (presumably the Union) to file the appeal for him or that there had been a foul-up in the filing of an appeal for him. However, Mr. Spears rejected the suggestion, replied that this was not the reason, and testified that he did not appeal because he just did not want the job.

During the time he was employed by the City, Mr. Spears applied for promotion to the Equipment Operator I job. There is no evidence or argument that he ever applied for promotion to any other job. He was promoted to that job on April 26, 1974. He had applied for the job on two occasions prior to his 1974 application when he was promoted. No evidence was offered from which it might be inferred that he might have a discrimination claim based on those pre-1974 applications. It could be speculated that junior white employees were selected on those pre-1974 occasions, but so also could it be speculated that black employees were selected for the job, or that senior white employees were selected, or that the applicants were carried on the Civil Service Board Register without anyone being appointed to the job.

In summation at the conclusion of the hearing, it was argued that the evidence was sufficient to warrant treating Mr. Spears as the representative of the class. (Mr. Spears was the only person who was offered in the summation as an appropriate class representative. As has been noted, there is no contention that either Mr. Scott

---

**5.** By interesting coincidence, two of the attorneys on opposite sides of this case were opposing authors in articles concerning unionism in public employment. Longshore, *Unions and* *The Public Employee in Alabama-Pro,* 26 Ala. Lawyer 46 (1965); Gardner, *Unions and the Public Employee in Alabama-Con,* 26 Ala.Lawyer 62 (1965).

or Mr. Hall might have been a proper class representative).

■ In the factual circumstances established by the evidence, the Court cannot concur with the plaintiffs' contention and finds that Mr. Spears is not and has not been an appropriate class representative for the following separate reasons:

First, it is ordinarily to be expected that a person representing an employee class in a lawsuit concerning terms and conditions of employment will himself have an interest in his employment with the defendant employer as well as in the lawsuit. Having such an interest is manifestly an element of the Rule 23(a) requirement that a class representative fairly and adequately represent the interests of the class. "The named plaintiff must demonstrate sufficient initial and continued interest in the action to warrant their being entrusted with the duty of representing the rights and interests of absent members." Schlei and Grossman, *Employment Discrimination Law* (Supp.1979), page 284. In this case, in contrast, the undisputed evidence establishes that Mr. Spears not only did not testify at the trial, but as well lacked an interest in his employment with the City and did not bother to appeal the termination of his employment to the Civil Service Board because he was just not interested in the job. Compare *In Re South Central States Bakery Products*, 86 F.R.D. 407 (M.D.La.1980) ("The test of adequate representation is whether the representative has a sufficient interest in, and nexus with, the class to insure vigorous prosecution of the action."). As similarly expressed in *Mayes v. Crown Central Petroleum Corp.*, 25 EPD ¶ 31,509 (S.D.Tex.1980):

"[T]he individual plaintiffs must have common interest with the named members of the class and it must appear that as representatives they will vigorously prosecute the interest of the class. *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973); *Johnson v. Highway Express, Inc.*, 417 F.2d 1122, 1124 (5th Cir. 1969). They must maintain this standard at every stage of the judicial proceedings. *Johnson v. Shreveport Garment Company*, 422

F.Supp. 526, 534 (W.D.La.1976), aff'd, 577 F.2d 1132 (5th Cir. 1978)."

Although not argued by the plaintiffs, the Court has for complete analysis considered whether it might be said that Mr. Spears' lack of interest in his job did not arise until the 1979 strike and the termination of the strikers. If such were the case, it could then be theorized that his post-1979 attitude toward employment with the City should not be considered in evaluating whether he met the Rule 23 requirements prior to 1979.

It must be concluded that the Court may not indulge in speculation that Mr. Spears' lack of interest in his job did not arise until 1979. The extent of anyone's interest in a job is manifested in outward ways, such as productivity, attendance, or, as in this case, by not bothering to appeal termination to the Civil Service Board, but it is at the same time peculiarly within the inner subjective mental opinion of the individual, because each person knows, better than anyone else, the extent of his own interest in his job. In this instance, it would have been simple enough for Mr. Spears to have testified he was interested in his job prior to 1979 had such been the case. Since he gave no such testimony, the Court cannot engage in any speculation that he had any such mental process. Moreover, as a matter of common sense, it would be illogical to conclude that he had an active interest in his job prior to the 1979 strike and then lost interest overnight. If anything, the converse is true, as discharged employees who have been interested in their jobs would generally be expected to display that interest by seeking reinstatement.

■ Second, the class claims in this lawsuit concerned promotions. When this lawsuit was filed, Mr. Spears had previously been promoted in 1974 to the job to which he sought promotion, and there is neither evidence nor argument that he ever sought promotion to any job other than the job to which he was promoted. It is certainly true that a plaintiff's promotion does not mean he may not be a representative of a class

with respect to promotions,[6] but it is equally certain that it is a factor which may be evaluated in considering whether such a person satisfies the requirements of Rule 23. Compare *Miller v. Motorola, Inc.*, 76 F.R.D. 516 (N.D.Ill.1977) ("since plaintiff was hired, promoted, and given an opportunity to transfer, as the undisputed facts show, she cannot properly represent a class consisting of people who were allegedly denied those opportunities because of sex."); *Scott v. University of Delaware*, 601 F.2d 76 (3rd Cir. 1979), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979) (holding that the District Court erred in not decertifying the class on the basis of facts adduced at trial, including the fact that "Scott seeks to lead a challenge against the same university hiring policies which resulted in his employment."). In the present case, the fact that Mr. Spears was promoted to the job he sought in 1974, and does not contend he ever sought or desired promotion to any other job, militates against a conclusion that he satisfied the standard that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). As the Court of Appeals has recently said in *Walker v. Jim Dandy Co.*, 638 F.2d 1330 (5th Cir. 1981):

> "It is well established that 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members' in order to satisfy the requirements of Fed.R. Civ.P. 23(a). *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977)."

Third, the only argument asserted in support of treating Mr. Spears as a class representative is itself indicative of the extent to which the Court would have to strain to consider him to have been an adequate class representative. The argument is that prior to being promoted in 1974, he applied twice for the job and that he therefore has a claim typical of the class claims. The initial infirmity in the argument is that there is no evidence from which it might be inferred that he had any discrimination claim based on his pre-1974 applications for the job. All the evidence shows is that he applied for the job on two occasions before he was promoted in 1974, and while it could be speculated that he was not promoted on the pre-1974 occasions because junior white employees were selected or because he failed an examination, so also may it be speculated that black employees were promoted or that no one was promoted. Mr. Spears should know whether any aspect of his pre-1974 applications might have been arguably discriminatory, and since he offered no such evidence, it would be improper for the Court to engage in any speculative assumption that the circumstances of those pre-1974 applications may have given rise to any discrimination claim.

Moreover, the argument is not that he had a claim for future promotion following his promotion in 1974. As has been noted, there is no contention that he sought or desired any promotion after he was promoted in 1974 to the job he sought. The argument instead is that he has a back pay claim based on his pre-1974 applications. If it is assumed arguendo that this argument could avoid the problem of there being no evidence of racial implications in his pre-1974 applications, and the additional question of whether his pre-1974 applications were made the subject of a timely EEOC charge,[7] there still remains the problem that at best, giving him the benefit of all conceivable arguendo assumptions, the argument is that he has a claim for back pay based on occasions antedating 1974, and this limited and speculative stake in the litigation is too tenuous to be treated as typical of class claims for promotion.

Fourth, Mr. Spears has not been active in this lawsuit. He did not testify in 1976, nor was any evidence offered then with regard to him or any claim he might have had, and no evidence of any substance was offered at

---

6. E. g., *Jenkins v. United Gas Corp.*, 400 F.2d 28 (5th Cir. 1968).

7. *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

the hearing on May 11, 1981 to suggest that he has taken any active part in the case.

In summary, the Court finds that none of the named plaintiffs has been an appropriate class representative. With respect to Mr. Scott and Mr. Hall, there is no argument that either of them might have been an adequate representative. The Court has nevertheless engaged in the arguendo assumption that there might be such an argument and has found neither of them satisfied the Rule 23 requirements for representative status. With respect to Mr. Spears, the only plaintiff for whom class representative status is argued, the Court has found that he has not satisfied the Rule 23 requirements in view of his lack of interest in employment with the City, as well as the fact he was promoted in 1974 to the only job he sought and has at most only a limited and speculative claim arising from pre-1974 applications for the job. The result thus is that by carrying out the obligation to "determine the propriety of class action status ___ after trial on the merits",[8] it must be concluded that this case has never possessed the essential element of a class representative.

### F. IS THERE ANYONE OTHER THAN THE NAMED PLAINTIFFS WHO MIGHT BE TREATED AS A CLASS REPRESENTATIVE?

During the conference with counsel for the parties on April 16, 1981, the Court pointed out that one of the purposes of the hearing set for May 11, 1981 was to hear evidence as to the suitability as a class representative of anyone other than the named plaintiffs, so that the case could continue to receive class action treatment if it were determined that the named plaintiffs were not proper class representatives.

However, there was no request by anyone to intervene or to be treated as a class representative, there was no evidence or argument that anyone else might be substituted as a class representative, and no one came forward at the hearing with any offer to become a class representative. The

Court therefore cannot treat anyone else as a class representative because "there is no one from whom to select." *Armour v. City of Anniston,* 89 F.R.D. 331 (N.D.Ala.1980).

### G. COULD THE COURT ALLOW CLASS ACTION TREATMENT WITHOUT A CLASS REPRESENTATIVE?

 Since none of the named plaintiffs has satisfied the requirements for class representative status and no one else has sought or been offered as a class representative, it remains to consider whether the Court could allow the case to proceed as a class action with no class representative.

The answer must be in the negative, because "In any class action, the class must be represented. Fed.R.Civ.P. 23(a), 23(a)(4). See *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975)." *Bantolina v. Aloha Motors,* 75 F.R.D. 26 (D.Haw.1977). See also *Shipp v. Memphis Area Office, Tennessee Department of Employment Security,* 581 F.2d 1167 (6th Cir. 1978), cert. denied, 440 U.S. 980, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979), in which the Court criticized the fact that "the district court proceeded to decide the merits of the class claims in the absence of a class representative, much less one who would fairly and adequately protect the interests of the class ___."). Recent applications of the requirement of a class representative are illustrated by *Ford v. United States Steel Corp.,* 638 F.2d 753 (5th Cir. 1981); *Satterwhite v. City of Greenville,* 634 F.2d 231 (5th Cir. 1981); *Armour v. City of Anniston,* 622 F.2d 1226 (5th Cir. 1980), and *Walker v. Jim Dandy Co.,* 638 F.2d 1330 (5th Cir. 1981), which stand for the proposition that when a named plaintiff is determined not to be an appropriate class representative, the District Judge should determine whether anyone else might be substituted as a class representative.

The plaintiffs nonetheless insist that there is no legal or practical reasons to have a class representative because, according to the argument, all issues of liability have

---

**8.** *Johnson v. Shreveport Garment Co.,* supra.

been adjudicated and nothing remains except the determination of the amount of money allegedly due. The theory cannot be accepted on the particular facts of this case for the following separate reasons:

First, the argument is premised on the assumption that the case was properly a class action to the present and is being ruled not to be a proper class action from this time forward. In fact, the case was never a proper class action.

Second, the evidence at the May 11, 1981 hearing revealed, for the first time, that the object of the class claim from the outset has been for monetary damages and thus could not have been a 23(b)(2) action.[9] The plaintiffs' argument that a class representative is not now needed is the equivalent of urging the untenable proposition that a class representative is not needed for a 23(b)(3) action.

Third, to argue that all issues of liability have been adjudicated is not an accurate reflection of the unusual situation involved in this litigation. The trial and this Court's decision focused principally on the question of intent, it then having been an unsettled legal issue as to whether purposeful discrimination is an element of a Title VII case against a Government employer. This Court never conducted a full evaluation of all liability issues, because it was at that time unnecessary to do so. The Court is aware that the Court of Appeals, after holding that purposeful discrimination is not an element of a Title VII case against a Government employer, stated that the plaintiffs had made out a prima facie case which the defendants failed to rebut. However, that could not logically be taken as an appellate adjudication of all issues of liability because the Courts of Appeals do not decide questions which have yet to be ruled on by the District Courts.

## H. WAS THERE A CLASS WITHIN ONE OF THE RULE 23(b) SUBDIVISIONS?

The starting point in analysis of this question is the fact that the class claim

consists of an attack on the use of written promotional examinations. At the same time, it is also undisputed that at least since 1975, the results of written promotional examinations have been discarded and performance tests used whenever black employees have not scored well on the written examinations. This fact was established without contradiction by the testimony of Mrs. Julia Hinton, who is Chairperson of the Anniston Civil Service Board and has been a member of the Board since March 1975. There is no evidence or argument that the performance tests might not be job-related or that such performance tests might have had any disproportionate impact on black employees. It is therefore apparent that in the factual circumstances of this case, the class claim has not sought injunctive or declaratory relief with respect to the class but rather has sought monetary damages for individuals based on the period of time antedating 1975.

To proceed as a class action, a lawsuit must satisfy the requirements of Rule 23(a) and one of the subdivisions of Rule 23(b). *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("In addition to meeting the four conjunctive requirements of 23(a), a class action must also qualify under one of the three subdivisions of 23(b)."); 7 Wright and Miller, *Federal Practice and Procedure* § 1759 (1972) ("even when the court determines that the action satisfies all the requirements of Rule 23(a), it also is necessary that the action fall within one of the three categories of class suits described in Rule 23(b)."). Where the primary relief sought is injunctive or declaratory, the applicable subdivision is Rule 23(b)(2) ("the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."). Where the primary relief sought is monetary, the applicable subdivision is Rule 23(b)(3) ("the court finds that the questions of law or fact common to

---

**9.** This point is analyzed in more detail in Section H, infra.

the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."). Stated in practical terms, 23(b)(2) cases are generally considered to be those seeking prospective relief, while 23(b)(3) is referred to as the "damage class action." Miller, *An Overview of Federal Class Actions: Past, Present, and Future* (1977), pages 40, 47.

In this case, the plaintiffs' contention is and has been that the case is due 23(b)(2) class action treatment as an action for which final injunctive relief or corresponding declaratory relief with respect to the class as a whole is appropriate. The problem with the contention on the facts of this case is that there is no sustainable theory on which injunctive or declaratory relief could be sought because the single subject of the class claim—i. e., the use of written promotional examinations—has been academic since at least 1975. This is not the usual 23(b)(2) Title VII case in which the assertion of monetary claims does not detract from 23(b)(2) treatment on the theory that the predominant relief sought is injunctive or declaratory. E. g., *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211 (5th Cir. 1974); *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971), cert. dismissed, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971). In those cases, the "primary prayer was for injunctive relief and the additional request for back pay does not preclude certification as a 23(b)(2) class action." *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976), cert. denied, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976).

In this case, in contrast, the facts are that the monetary claims could not conceivably be regarded as ancillary to any predominant claim for injunctive or declaratory relief, because here the only claim consists of monetary damages for the period of time prior to 1975. Obviously, therefore, the case was not suitable for class action treatment under 23(b)(2). Compare *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977) (Title VII case in which the Court observed that "the action seeks as a major portion of the claimed relief, monetary restitution. To the extent that such relief predominates over the injunctive relief, section (b)(2) of Rule 23 is inappropriate."); *Baham v. Southern Bell Tel. & Tel. Co.*, 55 F.R.D. 478 (W.D.La.1972) ("But (b)(2) was not intended to apply where the appropriate final relief relates exclusively or predominantly to money damages. Rather it is limited to cases where, on behalf of the class as a whole, final injunctive or corresponding declaratory relief is appropriate."); *McAdory v. Scientific Research Instruments*, 355 F.Supp. 468 (D.Md.1973) ("Although some courts have allowed monetary relief under a Rule 23(b)(2) action— this court does not feel that these authorities can be read to allow suits primarily for damages to be maintained under Rule 23(b)(2) [Committee Note of 1966 to Rule 23 as Revised in 1966, 3B J. Moore, Moore's Federal Practice ¶ 23.01 [10.–2], at 23–28 (2d ed. 1969)]; and to the extent that plaintiff's class action is a suit for damages, it is not maintainable under that provision."); *Waldrip v. Motorola, Inc.*, 85 F.R.D. 349 (N.D.Ga.1980) (case not suited for 23(b)(2) certification for injunctive or declaratory relief because the employment practice at issue had been discontinued); *Abron v. Armco Steel Corp.*, 22 EPD ¶ 30,587 (C.D. Cal.1978) (case unmanageable as a class action due to predominance of damages issue).

Accordingly, since there is no allegation, argument, or evidence for 23(b)(1) or 23(b)(3) treatment, this case did not satisfy the requirement of being due treatment under any subdivision of Rule 23(b), and it therefore failed to satisfy the prerequisite that "In addition to meeting the four conjunctive requirements of 23(a), a class action must also qualify under one of the three subdivisions of 23(b)." *Eisen v. Carlisle & Jacquelin*, supra.

## I. IS THERE A LIVE CONTROVERSY?

█ There is no doubt that a certified class may retain an independent and adequate stake to satisfy the live controversy requirement of Article III, but there must be a continuing live controversy. *United*

*States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Ford v. United States Steel Corp.*, 638 F.2d 753 (5th Cir. 1981). On the particular facts of this case, it must be concluded that the evidence has shown no such live controversy.

First, the Supreme Court expressed the view in *United States Parole Commission v. Geraghty*, supra, that the fact class members had moved to intervene or be substituted as named plaintiffs demonstrated the existence of a live controversy. (445 U.S. at 396, 100 S.Ct. at 1208). In the present case, with no one having moved to intervene and no evidence having been offered as to anyone else who might be a class representative, this test for ascertaining a live controversy is obviously not satisfied. Compare *Armour v. City of Anniston*, 89 F.R.D. 331 (N.D.Ala.1980).

■ Second, it is apparent that there is no continuing live controversy with respect to the period since 1975 because the facts are that written promotional examinations have been discarded and performance tests used instead whenever black employees have not done well on written examinations. Similarly, the only stake the class has consists of monetary claims for the period prior to 1975, and that cannot be treated as a subdivision (b)(2) class action.

### J. SUMMARY:

It is determinative without more that none of the named plaintiffs has been an appropriate class representative and that there is neither evidence nor argument as to anyone else who might be treated as a class representative. Nevertheless, the additional reasons which have been analyzed above would also compel the conclusion that the case is not and has not been an appropriate class action.

Accordingly, for any or all of these reasons, the Court must find that the defendants have carried the burden of showing that the case has not been maintainable at any time as a class action, that the class

action treatment accorded by stipulation was improvidently accepted, and that the class action status of the case is due to be decertified. The resulting dismissal of the class claims shall be without prejudice. *Johnson v. Uncle Ben's, Inc.*, 628 F.2d 419, 423 (5th Cir. 1980). The Court deems it in order that notice of this ruling be given to all black persons who have been employed in the Public Works Department since December 2, 1972. *Gilford v. Wilson Industries*, 23 EPD ¶ 31,138 (S.D.Tex.1980) (notice of decertification not required but deemed advisable).

### II.

### STATUS OF INDIVIDUAL CLAIMS

It is also in order to consider the status of the individual claims of the named plaintiffs. In doing so, it should be emphasized that the Court's discussion of this subject is simply to analyze all aspects of the case and that the named plaintiffs' failure to prevail on their individual claims has been given no consideration in evaluating the question (covered in Section I, supra) of whether this case met the requirements of Rule 23. As illustrated by *Walker v. Jim Dandy Co.*, 638 F.2d 1330 (5th Cir. 1981) and by the majority and dissenting opinions in *Satterwhite v. City of Greenville*, 634 F.2d 231 (5th Cir. 1981), the effect on class action status of a ruling adverse to a named plaintiff's claim is not sufficiently settled to warrant consideration of that ground in a case where class action status may appropriately be decided on other grounds.

With respect to Mr. Scott and Mr. Hall, there is no doubt that their claims were resolved against them after trial and that this resolution was affirmed on appeal as to Mr. Scott and not contested on appeal as to Mr. Hall. Similarly, in repeating his claim in testifying at the hearing on May 11, 1981, Mr. Hall confirmed conclusively that he had no arguable discrimination claim.

■ With respect to Mr. Spears, the situation could arguably be different. Since no evidence by him or on his behalf was

offered at trial, it is arguable that his individual claim should now be set for trial. This argument has not been asserted, but the Court has itself raised and considered it for complete analysis. Having done so, the Court concludes that it would not be appropriate to set another trial for Mr. Spears' claim. If any plausible reason had been offered to explain the fact that no evidence was presented at the trial in support of any claim he might have, there would be grounds on which it could be said that another trial should be set for him. However, since no such reason has been given, it must be concluded that he passed up his opportunity to a trial on such individual claim as he might have.

Judgment in conformity with this Memorandum Opinion will be entered contemporaneously herein.